IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JM, through her next friend John Foley, and
JE, through her next friend Maria Fellin,
on her own behalf and on behalf of a class of
all other similarly-situated persons,

      Plaintiffs,

vs.                                          NO. CIV 07-0604 RB/ACT

NEW MEXICO DEPARTMENT OF HEALTH,
et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Joint Motion for Summary Judgment on Tort Claims Act and Negligence Claims on the Basis of the Statute of Limitations, filed on July 17, 2008. Jurisdiction is founded upon 28 U.S.C. § 1331. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, Defendants' Joint Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**I.    Background.**

This lawsuit was brought on behalf of Plaintiffs JM and JE, former residents of state institutions for persons with developmental disabilities, and a putative class of all other similarly-situated persons. JM was discharged from state custody by Court Order on June 29, 1979. JE was discharged from state custody by Court Order in 1972. Plaintiffs allege that JM, JE, and members of the putative class were improperly discharged from state institutions for persons with developmental disabilities and placed in unlicensed agencies where they suffered abuse, neglect, and deprivation of the care and services for which they were entitled. Plaintiffs

further allege that JM, JE, and members of the putative class were not provided with legally recognized surrogate decision-makers, such as a guardian, conservator, or treatment guardian, to assist them and protect their legal rights.  Plaintiffs JM and JE and members of the putative class seek injunctive and declaratory relief to remedy the alleged failures of the State of New Mexico to protect and care for them.  Plaintiffs JM and JE individually seek damages for injuries and deprivations they allegedly suffered as a result of the Defendants' actions.

Defendants seek summary judgment based on the running of the controlling statute of limitations on Plaintiffs' Twelfth, Thirteenth, and Fourteenth causes of action in which Plaintiffs JM and JE individually seek damages for negligent operation and maintenance of a public building and negligent operation of a state-operated mental institution, pursuant to the New Mexico Tort Claims Act, and negligence and negligent placement of individuals with developmental disabilities.

## II.     Summary Judgment Standard.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

**III.    Discussion.**

JM and JE have different procedural and remedial rights in relation to their Twelfth and

Thirteenth Causes of Action, requiring the Court to analyze these claims separately. *Romero v. New Mexico Health and Env't Dep't*, 107 N.M. 516, 519, 760 P.2d 1282, 1285 (N.M. 1988). Substantive rights deal with the creation of rights and obligations under the law; procedural or remedial rights, on the other hand, prescribe methods of obtaining redress or enforcement of substantive rights. *Id*. Plaintiffs JM and JE each gained a substantive rights to sue in a tort cause of action at the times of their respective injuries, and their substantive right to sue vested at the respective time of their injuries. *See Id.* As a general matter, however, there are no vested rights to a particular remedy or method of procedure at the time of an injury. *Id*. Indeed, remedial and procedural rights are protected constitutionally from abrogation only after a cause of action is pending. *See* N.M. Const. Art. IV, § 34. Consequently, the legislature could have redefined the parameters of sovereign immunity and altered the remedy available to JM and JE up until their case was filed on the docket of some court. *Romero*, 107 N.M. at 519, 760 P.2d at 1285.

Until July 1, 1976, the common law doctrine of sovereign immunity barred suits against the State of New Mexico and its agencies, unless the State had waived its immunity. *See Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (N.M. 1976). The Supreme Court of New Mexico, in *Hicks v. State*, prospectively overturned the common law doctrine of sovereign immunity, effective on July 1, 1976. *Id.* In reaction to the *Hicks* opinion, the State legislature enacted the Tort Claims Act, granting all government entities and their employees general immunity from actions in tort, except in specified circumstances. *Upton v. Clovis Mun. Sch. Dist.*, 140 N.M. 205, 206, 141 P.3d 1259, 1260 (N.M. 2006). The Tort Claims Act, however, does not apply to any occurrence giving rise to a claim against a government entity or public employee arising prior to July 1, 1976. *Romero*, 107 N.M. at 519, 760 P.2d at 1285. Instead, occurrences giving rise to claims that arose prior to July 1, 1976 are governed by the statute in effect at the time the claim arose.

*Id.*

JE was discharged by Court Order from state custody in 1972, prior to the enactment of the Tort Claims Act.  Because JE's alleged injuries under the Tort Claims Act could only have taken place during the time in which she was in state custody, i.e., prior to the enactment of the Tort Claims Act, she cannot state a claim upon which relief can be granted under the Tort Claims Act. *Id.*  Plaintiff JE's Twelfth and Thirteenth Causes of Action, therefore, must be dismissed with prejudice.

JM was discharged by Court Order from state custody in 1979, after the enactment of the Tort Claims Act.  There are questions of fact as to the exact dates of JM's alleged injuries, i.e., the dates of JM's various placements with allegedly unlicensed and unsupervised outside facilities or third parties. However, these questions of fact are not material to the adjudication of JM's Twelfth and Thirteenth Causes of Action. *See Anderson*, 477 U.S. at 248.  As a matter of law, JM lacks a cause of action under the Tort Claims Act for any allegedly injurious placements that terminated prior to July 1, 1976. *See Romero*, 107 N.M. at 519, 760 P.2d at 1285.  Furthermore, any causes of action JM had for injurious placements that continued through or took place after July 1, 1976 are barred by the applicable statute of limitations. *Jaramillo v. State*, 11 N.M. 722, 726-27, 809 P.2d 636, 640-41 (N.M. Ct. App. 1991), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (N.M. 1991).  Indeed, the Tort Claims Act specifically provides:

> Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. *This subsection applies to all persons regardless of minority or other legal disability.*

NM Stat. Ann. § 41-4-15 (1978) (emphasis added).  The principle of fairness implicit in the Due Process Clauses of the United States and New Mexico Constitutions dictates that a limitations

5

period must provide a reasonable amount of time for a cause of action to be brought. *Garcia v. La Farge*, 119 N.M. 532, 541, 893 P.2d 428, 437 (N.M. 1995). The Court of Appeals of New Mexico, however, has specifically held that two years constituted a reasonable period of time in which to require a mentally incompetent victim to file suit under the Tort Claims Act. *Jaramillo v. State*, 11 N.M. at 726-27, 809 P.2d at 640-41; *see also Jaramillo v. Heaton*, 136 N.M. 498, 501, 100 P.3d 204, 207 (N.M. Ct. App. 2004) (reiterating the Court's holding in *Jaramillo v. State*). Furthermore, implied or equitable exceptions are not to be grafted upon the statute of limitations where the legislature has not made the exception in express words in the statute. *Mosgrave v. McManus*, 24 N.M. 227, 173 P. 196, 197 (N.M. 1918); *Slade v. Slade*, 81 N.M. 462, 463, 468 P.2d 627, 628 (N.M. 1970). Thus, Plaintiff JM's Twelfth and Thirteenth Causes of Action are barred by the statute of limitations and must be dismissed with prejudice.

JM and JE's procedural and remedial rights overlap with regard to their Fourteenth Cause of Action, allowing the Court to analyze this claim jointly. As a preliminary matter, the only injuries alleged in JM and JE's Fourteenth Cause of Action that can form the basis of a claim upon which relief can be granted are those that occurred prior to July 1, 1976. *Romero*, 107 N.M. at 519, 760 P.2d at 1285. To the extent that JM and JE's Fourteenth Cause of Action is based on injuries occurring after July 1, 1976, these claims are barred by the Tort Claims Act. *See New Mexico Livestock Board v. Dose*, 94 N.M. 68, 72, 607 P.2d 606, 611 (N.M. 1980). As the Court has explained previously, the Tort Claims Act does not apply to occurrences giving rise to a claim against a government entity or public employee that arose prior to July 1, 1976. *Romero*, 107 N.M. at 519, 760 P.2d at 1285. These claims are governed by the statute that was in effect at the time the claim arose. *Id*. The exact dates of JM and JE's alleged injuries remain questions of material fact. However, any of JM and JE's alleged injuries that occurred between July 1,

1975 and July 1, 1976 must be adjudicated under the Public Officers and Employees Liability Act, NM Stat. Ann. § 5-13-4 (1975)(Repealed 1976), and any alleged injuries that occurred prior to July 1, 1975 must be adjudicated under NM Stat. Ann. § 5-6-20 (1959)(Repealed 1975).[1] *See Romero*, 107 N.M. at 519, 760 P.2d at 1285.

The controlling statute of limitations for JM and JE's tort claims that arose prior to July 1, 1976 is NM Stat. Ann. § 37-1-8 (1978), which provides for a three year statute of limitations period for personal injury. *Romero*, 107 N.M. at 520 fn. 4, 760 P.2d at 1286 fn. 4.  NM. Stat. Ann. § 37-1-10 (1978) extends the statute of limitations period for "incapacitated persons" for "one year from and after the termination of such incapacity." *Id.*  The term "incapacitated person" is left undefined in the statute of limitations; however, the term is defined in the New Mexico Probate Code:

> [T]he term "incapacitated person" means any person who demonstrates over time either partial or complete functional impairment by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he is unable to manage his personal care or he is unable to manage his property and financial affairs.

NM Stat. Ann. § 38-4-14 (1978).  Plaintiffs JM and JE have put forward sufficient evidence, including various psychological evaluations, to show that there is a genuine issue of material fact

---

[1]Because *Hicks* is not applicable to torts committed on or after July 1, 1976, the applicability of the defense of sovereign immunity to JM and JE's Fourteenth Cause of Action is both limited and defined by the provisions of NM Stat. Ann. § 5-6-20 (1959)(Repealed 1975) and NM Stat. Ann. § 5-13-4 (1975)(Repealed 1976). *See New Mexico Livestock Board*, 94 N.M. at 72, 607 P.2d at 611. While both statutes provide broad waivers of sovereign immunity, allowing suits in tort to be maintained against the state, public institutions, and public employees, these waivers of sovereign immunity are limited to instances in which there is liability insurance to cover the amount and cost of any judgment. *See* NM Stat. Ann. § 5-6-20 (1959)(Repealed 1975); NM Stat. Ann. § 5-13-4 (1975)(Repealed 1976).  "If there is no insurance, the defense of sovereign immunity is valid.  It is as simple as that." *New Mexico Livestock Board*, 94 N.M. at 72 607 P.2d at 606.  It is a question of material fact whether there was liability insurance coverage in effect at the times of JM and JE's alleged injuries.

as to whether they are and have been continuously incapacitated persons since their respective discharges from state custody, for purposes of tolling the statute of limitations, pursuant to NM. Stat. Ann. § 37-1-10 (1978). Defendants, however, also argue that granting summary judgment based on the expiration of the statute of limitations would still be appropriate because the appointment of a legal representative for JM and JE terminated their possible status as incapacitated person for purposes of tolling the statute of limitations. This argument is unpersuasive because the right of action is in JM and JE rather than their legal representative. *See Slade*, 81 N.M. at 466, 468 P.2d at 631. Indeed, NM. Stat. Ann. § 37-1-10 preserves the ability of incapacitated persons to bring claims on their own behalf until such a time as their disability is removed. *See Id.* Thus, the Court finds that the record is insufficient to make a finding as to whether JM and JE have been continuously incapacitated since their respective discharges from state custody; therefore, questions of material fact remain and summary judgment on JM and JE's Fourteenth Cause of Action is inappropriate. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587.

As a final point, the Court finds that the doctrine of fraudulent concealment is inapplicable to Plaintiffs JM and JE's Twelfth, Thirteenth, and Fourteenth Causes of Action. Plaintiffs essentially argue that the doctrine of fraudulent concealment applies to this case because JM and JE could not have known through the exercise of reasonable diligence of their injuries within the statutory period. This novel application of the doctrine of fraudulent concealment, however, would inappropriately bootstrap a tolling exception based on the doctrine of fraudulent concealment from a tolling exception based on mental incapacity. Furthermore, Plaintiffs JM and JE were discharged from state custody by presumptively valid Court Orders. Plaintiffs' fraudulent concealment claim would require this Court to find that the Court Orders

discharging JM and JE from state custody were uninformed, ill advised, and based solely on the allegedly fraudulent representations of the Hospital Evaluation Board. Plaintiffs, however, have failed to set forth any specific facts showing that there is a genuine issue of material fact regarding the validity of the Court Orders. *See Munoz*, 221 F.3d at 1164. Furthermore, the Court Orders discharging JM and JE from state custody both explicitly state that the Court in each case was fully advised on the matter (Doc. 130-2, 130-3). This Court declines to reopen the validity of Court Orders issued approximately 29 and 36 years ago based solely on Plaintiffs' conclusory allegations.

### IV. Conclusion.

Plaintiff JE cannot state a claim upon which relief can be granted under the Tort Claims Act. Plaintiff JM's causes of action under the Tort Claims Act are barred by the statute of limitations. With respect to JM and JE's claims that arose prior to the enactment of the Tort Claims Act, the issue of whether JM and JE have been continuously incapacitated, for purposes of tolling the statute of limitations, since their respective discharges from state custody remains a question of material fact.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Joint Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

*[signature]*

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**