# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JM, through her next friend John Foley, and
JE, through her next friend Maria Fellin,
on her own behalf and on behalf of a class of
all other similarly-situated persons,

       **Plaintiffs,**

vs.                                                                      **NO. CIV 07-0604 RB/ACT**

**NEW MEXICO DEPARTMENT OF HEALTH,**
et al.,

       **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court on the Motion to Dismiss Substantive Due

Process Claims on the Basis of Qualified Immunity brought by Defendants Dan Sandoval, Roger

Adams, Joseph Mateju, and Does 1-10 (hereinafter "Defendants").  Jurisdiction is founded upon

28 U.S.C. § 1331.  Having considered the submissions of the parties, relevant law, and being

otherwise fully advised, Defendants' Motion to Dismiss Substantive Due Process Claims on the

Basis of Qualified Immunity is **DENIED**.

**I.      Background.**

The following background narrative is based on Plaintiffs JM and JE's allegations,

which, at this stage of the litigation, have not been substantiated.  However, for purposes of

analyzing Defendants' Joint Motion to Dismiss, pursuant to Rule 12(b)(6), this Court must

accept all of the Plaintiffs' well-pleaded allegations as true. *David v. City & County of Denver*,

101 F.3d 1344, 1352 (10th Cir. 1996).

JM is developmentally disabled.  In 1963, when JM was six years old, she was

committed by Court Order to the Los Lunas Hospital and Training School.  Defendants shuttled

her among various state-owned or state-funded facilities, without court permission, between

1964 and 1974.  JM alleges that, while in state custody, she was verbally and physically abused.

Defendants allegedly misappropriated JM's disability checks and neglected to provide her with

necessary educational, vocational, or psychological services.  In the late 1970s, JM alleges that

Defendants recklessly transferred her, without judicial authority, from a group home in

Albuquerque to unlicensed private third party businesses where she was economically exploited

and deprived of her disability checks.  Defendants, acting as administrators of Los Lunas, also

allegedly conspired to discharge JM from state custody to unlicensed private third party

businesses.  Defendants allegedly made false representations to the state court regarding JM's

condition and well-being, and JM was discharged *ex parte* from state custody by Court Order on

June 29, 1979.  Despite JM's alleged inability to care for herself, Defendants allegedly

abandoned her, failing to monitor her health and welfare, to provide the services she required, or

to designate a legally recognized surrogate decision-maker to assist her and protect her legal

rights.

JE is developmentally disabled.  In 1963, when JE was twenty years old, she was

committed by Court Order to the Los Lunas Hospital and Training School.  JE alleges that, after

1963, Defendants transferred her to a different state facility, without court permission, failed to

provide her with the Supplemental Security Income to which she was entitled, neglected to

provide her with education, vocational training, or needed therapies, and required her to perform

labor without pay.  Plaintiffs allege that Defendants recklessly consigned JE to the custody of

private third party businesses, where she was economically exploited and deprived of her

disability checks.  Defendants, acting as administrators of Los Lunas, allegedly conspired to

discharge JE from state custody to unlicensed private third party businesses.  Defendants

allegedly made false representations to the state court regarding JE's condition and well-being,

and JE was discharged *ex parte* from state custody by Court Order in 1972.  Despite JE's alleged

inability to care for herself, Defendants allegedly abandoned her, failing to monitor her health

and welfare, to provide her with the services she required, or to designate a legally recognized

surrogate decision-maker to assist her and protect her legal rights.

   Plaintiffs JM and JE allege that Defendants, acting under color of state law, and in their

individual capacities during their tenure as state employees, violated Plaintiffs' procedural and

substantive due process rights by failing to provide JM and JE with the protection, care, and

services to which they were entitled and consigning them to the custody of private third party

businesses, without judicial authorization, where they were economically exploited, neglected,

and deprived of the essential care, services, and federal funds to which they were entitled.

Plaintiffs further allege that Defendants conspired to deprive them of the care and protection

they needed by misleading the state court as to JM and JE's situation and ability to care for

themselves.  By conspiring to discharge them from state custody without ensuring that

appropriate measures were taken to provide for JM and JE's health, safety, and well-being,

Defendants also allegedly violated Plaintiffs' substantive and procedural due process rights.

   Defendants seek to dismiss Plaintiffs JM and JE's substantive due process claims,

pursuant to 42 U.S.C. § 1983, in Plaintiffs' First Cause of Action.  Defendants argue that they

are entitled to qualified immunity because the federally protected rights Plaintiffs seek to assert

under the Fourteenth Amendment were not clearly established at the time of the Defendants'

alleged conduct.  Plaintiffs JM and JE counter that Defendants are not entitled to qualified

immunity because their acts violated Plaintiffs JM and JE's clearly established federal rights.

II.     **Rule 12(b)(6) Standard.**

A claim for relief may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).  For purposes of analyzing a motion to dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *David*, 101 F.3d at 1352.  The Court must also look for plausibility in the complaint; in other words, the complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

III.    **Discussion.**

42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege a deprivation of a federal right and that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs JM and JE allege that Defendants, acting under color of law, violated their substantive due process rights.  Plaintiffs also claim that Defendants violated their procedural due process rights; however, this motion to dismiss addresses only alleged violations of Plaintiffs JM and JE's substantive due process rights.

Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations "without due process of law." U.S. Const. amend. XIV, § 1.  The Supreme Court has emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotations omitted).  The constitutional protections of substantive due process only apply to transgressions above and beyond those covered by the ordinary civil tort system; the two are not

4

coterminous. *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). Indeed, what differentiates a constitutional deprivation of substantive due process from an ordinary common law tort is a "level of executive abuse of power" that "shocks the conscience." *County of Sacramento*, 523 U.S. at 846. "In other words, the executive abuse represents arbitrary action of government and requires a showing of government officials abusing their power, or employing it as an instrument of oppression." *Williams*, 519 F.3d at 1220 (quotations omitted).

State officials are generally not required to provide care and protection to individuals. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 201 (1989). However, when the state assumes control over an individual, a special relationship is triggered that creates an affirmative duty to provide protection to the individual. *Id.* at 199-200. In this case, JM and JE were placed in state custody by Court Order, which created a special relationship that required Defendants, state officials with responsibility for JM and JE, to affirmatively protect them from harm. *Id.* Furthermore, because JM and JE have developmental disabilities, the Defendants, as state officials with responsibility for JM and JE, had a greater duty to provide affirmative care to them. *See Youngberg v. Romeo*, 457 U.S. 307, 322 (1982).

The Supreme Court has instructed that a "professional judgment" standard is to be applied to the substantive due process claims of mentally disabled individuals in state custody. *See Id.* Indeed, state officials are shielded from liability unless a mentally disabled plaintiff can demonstrate that the state official failed to exercise professional judgment and that the failure to satisfy the normal professional standards is not justified by budgetary constraints. *Id.* at 323. Failure to exercise professional judgment requires more than mere negligence; instead, it requires an abdication of professional responsibility. *Yvonne L v. New Mexico Dept. of Human Services*, 959 F.2d 883, 894 (1992). Additionally, such an abdication of professional

5

responsibility must be sufficient to "shock the conscience." *County of Sacramento*, 523 U.S. at

846.  In relation to the placement of mentally disabled individuals in state custody into third

party settings, the standard is similar to that of the placement of children into a foster care

setting. *See Yvonne L.*, 959 F.2d at 893-94. Only if state officials place a mentally disabled

individual in a setting they know to be dangerous or otherwise unfit, without justification based

either on financial constraints or on considerations of professional judgment, do they expose

themselves to liability in damages. *See Youngberg*, 457 U.S. at 322-23; *Yvonne L.*, 959 F.2d at

893-94.

      Plaintiffs' substantive due process claims are based on allegations that Defendants were

recklessly indifferent in their failure to protect and care for JM and JE.  Plaintiffs also allege that

Defendants' failure to provide JM and JE with the care and services they required as

developmentally disabled individuals constituted an unjustified abdication of professional

responsibility. Plaintiffs further allege that Defendants placed JM and JE in settings that were

dangerous and otherwise unfit by committing them to the custody of private third party

businesses, without judicial authorization, knowing that JM and JE would be exploited

economically and deprived of the care and protection they required.  Finally, Plaintiffs allege

that Defendants, with reckless indifference, abdicated their professional responsibility by

conspiring to deceive the state court regarding JM and JE's welfare and capacity to function

outside of state custody, eventually leaving JM and JE to be exploited without anyone to care for

them or protect their legal rights.  The Court finds that these allegations, which the Court must

accept as true, shock the conscience and are sufficient to state a claim against Defendants

Sandoval, Adams, Mateju, and Does 1-10, in their individual capacities, pursuant to § 1983, for

violation of JM and JE's substantive due process rights. *County of Sacramento*, 523 U.S. at 846.

State and local officials who carry out executive or administrative functions are entitled to assert the defense of qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 194-97 (2004). Qualified immunity will protect a public official who has violated a plaintiff's federally protected rights so long as the official did not violate clearly established federal law. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  The related standards for qualified immunity are whether the public official acted in an objectively reasonable manner and whether the public official had fair warning that his or her conduct violated a federal law. *United States v. Lanier*, 520 U.S. 259, 270 (1997).  Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Therefore, when qualified immunity is asserted as a defense, the critical issue is whether the public official violated a federally protected right that was clearly established at the time he or she acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A federally protected right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson*, 483 U.S. at 640.

Part of the Court's task, in determining whether Defendants are entitled to qualified immunity in this case, is to identify the legal contours of the doctrine of substantive due process as applied to mentally disabled individuals in state custody during the 1970s. *Harlow*, 457 U.S. at 818.  The Supreme Court first articulated the legal contours of the substantive due process rights of mentally disabled individuals in state custody in 1982 in its landmark opinion in the *Youngberg v. Romeo* case. 457 U.S. at 307.  Prior to 1982, the legal contours of the substantive due process rights of mentally disabled individuals in state custody included the right to reasonable safety, adequate food, shelter, clothing, and medical care. *See Estelle v. Gamble*, 429

U.S. 97, 104-05 (1976) (noting that failure to provide medical care can be a violation of a prisoner's constitutional rights); *Youngberg*, 457 U.S. at 324 (noting that the state conceded a duty to provide adequate food, shelter, clothing, and medical care and that the Supreme Court found an unquestionable duty to provide reasonable safety).

Defendants' alleged conduct allegedly deprived Plaintiffs JM and JE of their substantive due process rights to reasonable safety and essential medical care. *See Youngberg*, 457 U.S. at 324; *Estelle*, 429 U.S. at 104-05. The legal contours of the doctrine of substantive due process were sufficiently clear in the 1970s to give state officials fair warning that it violated federal law to recklessly endanger developmentally disabled individuals by committing them to the custody of unlicensed third party businesses, where they would be economically exploited and deprived of essential medical care. *See Harlow*, 457 U.S. at 818; *Youngberg*, 457 U.S. at 324; *Estelle*, 429 U.S. at 104-05. Indeed, based on Plaintiffs' allegations, which the Court must accept as true, Defendants would have had fair warning that their alleged actions constituted violations of federal law. *See David*, 101 F.3d at 1352*; County of Sacramento*, 523 U.S. at 846; *Youngberg*, 457 U.S. at 324; *Estelle*, 429 U.S. at 104-05. Defendants Sandoval, Adams, Mateju, and Does 1-10, therefore, are not entitled to qualified immunity to Plaintiffs' substantive due process claims. Defendants, of course, are able to once again raise the defense of qualified immunity on a motion for summary judgment. *See Weigel v. Broad*, 544 F.3d 1143, 1150-51 (2008).

**IV.    Conclusion.**

Plaintiffs' allegations against Defendants Sandoval, Adams, Mateju, and Does 1-10 are sufficient to state a claim, pursuant to § 1983, for violation of Plaintiffs JM and JE's substantive due process rights. The legal contours of the substantive due process rights of mentally disabled individuals in state custody were sufficiently clear in the 1970s to give Defendants fair warning

that their alleged actions constituted violations of federal law.  Defendants Sandoval, Adams,

Mateju, and Does 1-10, therefore, are not entitled to qualified immunity to Plaintiffs' substantive

due process claims.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Substantive Due Process Claims

on the Basis of Qualified Immunity is **DENIED**.


_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**