## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JM, through her next friend John Foley, and
JE, through her next friend Maria Fellin,
on her own behalf and on behalf of a class of
all other similarly-situated persons,**

       **Plaintiffs,**

**vs.**                                                    **NO. CIV 07-0604 RB/ACT**

**NEW MEXICO DEPARTMENT OF HEALTH,
et al.,**

       **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** came before the Court on Defendants' Joint Motion to Dismiss

Plaintiffs' Second, Third, Fourth, and Eleventh Causes of Action brought by Defendants Dan

Sandoval, Roger Adams, Joseph Mateju, Beth Schaefer, and Does 1-10 (hereinafter

"Defendants").  Jurisdiction is founded upon 28 U.S.C. § 1331.  Having considered the

submissions of the parties, relevant law, and being otherwise fully advised, Defendants' Joint

Motion to Dismiss Plaintiffs' Second, Third, Fourth, and Eleventh Causes of Action is

**GRANTED**.

**I.**      **Background.**

The following background narrative is based on Plaintiffs JM and JE's allegations,

which, at this stage of the litigation, have not been substantiated.  However, for purposes of

analyzing Defendants' Joint Motion to Dismiss, pursuant to Rule 12(b)(6), this Court must

accept all of the Plaintiffs' well-pleaded allegations as true. *David v. City & County of Denver*,

101 F.3d 1344, 1352 (10th Cir. 1996).

In 1963, when JM was six years old, she was committed by Court Order to the Los Lunas Hospital and Training School.  JM alleges that Defendants shuttled her among various state-owned or state-funded facilities, without court permission, between 1964 and 1974.  She alleges that she was verbally and physically abused, denied federal benefits to which she was entitled, and that Defendants neglected to provide her with necessary educational, vocational, or psychological services.  In 1977, JM alleges that she was transferred, without judicial authority, from a group home in Albuquerque to a retirement home for elderly women and then to the household of the owner of the retirement home, where she was required to perform free labor. JM was discharged from state custody by Court Order on June 29, 1979.  She alleges that Defendants essentially abandoned her, failing to monitor her health and welfare, to provide the services she required, or to designate a legally recognized surrogate decision-maker to assist her and protect her legal rights.

In 1963, when JE was twenty years old, she was committed by Court Order to the Los Lunas Hospital and Training School.  JE alleges that, after 1963, Defendants transferred her to a different state facility without court permission, failed to provide her with the Supplemental Security Income to which she was entitled, neglected to provide her with education, vocational training, or needed therapies, required her to perform labor without pay, and eventually consigned her to the custody of third parties outside her family.  JE was discharged from state custody by Court Order in 1972.  JE alleges that the state improperly discharged her from custody, without her consent, without appointing a guardian to help her with decision-making, and without arranging for any of the critical services to which she was legally entitled.

Plaintiffs allege in their Second, Third, Fourth, and Eleventh Causes of Action that Defendants violated their rights secured by the Rehabilitation Act, the Americans with

Disabilities Act, the Medicaid Act, and the Social Security Act.   Defendants Sandoval, Adams, Mateju, Schaefer, and Does 1-10 seek to dismiss Plaintiffs' claims against them, in their individual capacities, arguing that Plaintiffs JM and JE cannot state a claim against them, under the Rehabilitation Act, the Americans with Disabilities Act, the Medicaid Act, or the Social Security Act, upon which relief can be granted.

## II.   Rule 12(b)(6) Standard.

A claim for relief may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).  For purposes of analyzing a motion to dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the Plaintiff. *David*, 101 F.3d at 1352.  The Court must also look for plausibility in the complaint; in other words, the complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

## III.   Discussion.

### A.  The Rehabilitation Act.

§ 504 of the Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against individuals with disabilities who are otherwise qualified for the program or activity receiving federal financial assistance. 29 U.S.C. § 794.  To enforce its provision, the Rehabilitation Act provides for suit against any program or activity receiving federal financial assistance. *Id.*  In this case, it is clear that the Los Lunas Hospital and Training School received federal financial assistance, not Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10. Thus, claims, under § 504 of the Rehabilitation Act, against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities, must be dismissed for failure to

3

state a claim upon which relief can be granted. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Emerson v. Thiel College*, 296 F.3d 184, 190 (3rd Cir. 2002); *Garcia v. S.U.N.Y.*, 280 F.3d 98, 107 (2nd Cir. 2001).

Furthermore, § 504 of the Rehabilitation Act invokes Congress' power under the Spending Clause, U.S. Const., Art. I, § 8, cl. 1, to place conditions on the grant of federal funds. *See Barnes v. Gorman*, 536 U.S. 181, 185-86 (2002).  The Supreme Court has repeatedly characterized Spending Clause legislation in terms of a contract, i.e., in return for federal funds, the recipient agrees to comply with federally imposed conditions. *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981).  Under the contract-law principles applied by the Supreme Court in this context, the proper defendant in a suit under such Spending Clause legislation is the public entity, program, or activity that is the recipient of the federal funds, not its employees. *See U.S. Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 606-11 (1986).  Thus, Plaintiffs JM and JE cannot maintain a suit, under the Rehabilitation Act, against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities.

Plaintiffs JM and JE also seek to use § 1983 as a vehicle to reach Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities. A comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n.*, 453 U.S. 1, 20 (1981). Within the Rehabilitation Act, Congress has provided a specific comprehensive internal enforcement mechanism to protect the rights of the disabled who are eligible for benefits from recipients of federal funds. *See* 29 U.S.C. § 794.  Thus, the Court finds that Congress intended to foreclose plaintiffs' ability to resort to the more general enforcement provisions of § 1983 to

vindicate the rights created by the Rehabilitation Act. *See Middlesex County Sewerage Auth.*, 453 U.S. at 20.  Plaintiffs JM and JE, therefore, cannot use § 1983 as a vehicle to enforce their statutory rights under the Rehabilitation Act.

### B.  The Americans with Disabilities Act.

Plaintiffs JM and JE stipulated in their Response, filed August 15, 2008, that they do not seek damages against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, under the Americans with Disabilities Act, pursuant to their Third Cause of Action.  Plaintiffs' Second Amended Complaint also explicitly states: "The ADA became effective as of 1992.  The Third Cause of Action applies to all acts that occurred after the effective date of the statute and any acts that began before the effective date of the statute and continued after the effective date of the statute." *See* 42 U.S.C.A. § 12131.  Plaintiff JM was discharged from state custody by Court Order in 1979, and Plaintiff JE was discharged from state custody by Court Order in 1972.  Plaintiff JM and JE's Second Amended Complaint does not contain allegations sufficient to plausibly state a claim upon which relief could be granted, under the Americans with Disabilities Act, against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10. *Twombly*, 127 S.Ct. at 1965 (2007).  Furthermore, Title II of the Americans with Disabilities Act does not provide for personal capacity suits. *See* 42 U.S.C. § 12132; *Garcia*, 280 F.3d at 107; *Emerson*, 296 F.3d at 189; *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 fn. 8 (8th Cir. 1999); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000).  Therefore, Plaintiffs' claims, under the Americans with Disabilities Act, against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities, are dismissed.

### C.  The Medicaid Act.

Plaintiffs apparently seek to use § 1983 as a vehicle to impose liability upon Defendants

Sandoval, Adams, Mateju, Schaefer, and Does 1-10, in their individual capacities, for violations of 42 U.S.C. §§ 1396a(a)(8) and 1396a(a)(10).  The Tenth Circuit Court of Appeals has not yet decided whether 42 U.S.C. §§ 1396a(a)(8) or 1396a(a)(10) create a private right of action enforceable against the state. *See Mandy R. V. Owens*, 464 F.3d 1139, 1144 (10th Cir. 2006). However, it is clear that neither 42 U.S.C. § 1396a(a)(8) nor 42 U.S.C. § 1396a(a)(10) create a private right of action enforceable against state officials in their individual capacities. *See LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999).  The Medicaid Act is legislation enacted pursuant to Congress' authority under the Spending Clause.  Indeed, Congress does not require states to participate in the Medicaid Act; however, once a state opts in, it must abide by Medicaid's laws and regulations in order to obtain federal funds. *See Bowen v. Massachusetts*, 487 U.S. 879, 883 (1988).  As stated previously, the Supreme Court has repeatedly characterized Spending Clause legislation in terms of a contract, i.e., in return for federal funds, the recipient agrees to comply with federally imposed conditions. *Halderman*, 451 U.S. at 17.  Thus, under the contract-law principles applied by the Supreme Court in this context, a private right of action, if available at all under the Medicaid Act, is available only against the recipients of federal funding. *LaShonda D.*, 526 U.S. at 640.  Thus, Plaintiffs JM and JE cannot maintain a cause of action, pursuant to § 1983, based on a violation of the Medicaid Act, against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities.

**D.  The Social Security Act.**

As the Supreme Court has repeatedly stated, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (internal quotation omitted).  Rather, private rights of action to enforce federal law must be created by

Congress, and this Court must, therefore, determine whether a congressional statute displays an intent to create not just a private right, but also a private remedy. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  As an initial matter, it is clear that there is nothing in the representative payee provisions of the Social Security Act that states that a beneficiary may file a lawsuit against a representative payee who has misused his or her benefits payments or otherwise violated the terms of the representative payee provisions of the Social Security Act. *See generally* 42 U.S.C. § 1383(a)(2) et seq.  Instead, the statute envisions that the Commissioner of Social Security will serve as the conduit through which an aggrieved beneficiary will recover monies as compensation for payments misappropriated or misused by the representative payee, and the statute further provides that the Commissioner will then hold the representative payee liable for repaying the misused benefits to the Social Security Administration. *See* 42 U.S.C. §§ 1383(a)(2)(E) and 1383(a)(2)(H)(I); 20 C.F.R. § 416.641 (2006).  Indeed, under the terms of the statute, if the representative payee is an individual, the Commissioner is strictly liable to the beneficiary for any amount misused if the payee "served fifteen or more [beneficiaries]" in the month during which the misuse is alleged to have occurred. 42 U.S.C. § 1383(a)(2)(E)(ii).  If, however, the representative payee is an individual serving fewer than fifteen beneficiaries, the Commissioner is not liable to an aggrieved beneficiary under these subsections for misused benefits, but must still "make a good faith effort" to recover such benefits from the payee, and then pay "an amount equal to the recovered amount to [the beneficiary]." 42 U.S.C. §§ 1383(a)(2)(E) and 1383(a)(2)(H)(I).

Because all aggrieved beneficiaries, including those whose representative payees are individuals, are at least guaranteed to be paid an amount equal to whatever the Commissioner is able to recover from the representative payee, the Court finds that Congress did not intend to

create a privately enforceable remedy for civil damages against representative payees. *See* 42

U.S.C. §§ 1383(a)(2)(E) and 1383(a)(2)(H)(I); 20 C.F.R. § 416.641 (2006).  Otherwise, the

beneficiary whose representative payee organization misused his or her funds could be

compensated twice for the benefit misused.  Such a result would not be consistent with the

Social Security Act's explicit provisions prohibiting the Commissioner from paying a

beneficiary more than the amount lost through misuse or misappropriation. 42 U.S.C. §

1383(a)(2)(H)(ii) (stating that "the total of the amount certified for payment to [a beneficiary]

under [the provisions mandating payment by the Commissioner in the event that a representative

payee misuses benefits] may not exceed the total benefit amount misused by the representative

payee with respect to such individual").

Plaintiffs argue that the representative payee's direct liability to a plaintiff was set forth

explicitly in the regulation, in effect prior to 2005, that implemented 42 U.S.C. §§ 1383(a)(2):

> [The Social Security Administration's] obligation to the beneficiary is completely
> discharged when we make a correct payment to a representative payee on behalf of the
> beneficiary.  The payee personally, and not [the Social Security Administration], may be
> liable if the payee misuses the beneficiary's benefits.

20 C.F.R. § 416.641 (2004).  In 2005, however, the Social Security Administration clarified the

regulation regarding recovery of payments to a representative payee that were misused:

> (a) A representative payee who misuses your benefits is responsible for paying back
> misused benefits. We will make every reasonable effort to obtain restitution of misused
> benefits so that we can repay these benefits to you.
>
> (b) Whether or not we have obtained restitution from the misuser, we will repay benefits
> in cases when we determine that a representative payee misused benefits and the
> representative payee is an organization or an individual payee serving 15 or more
> beneficiaries. When we make restitution, we will pay you or your alternative
> representative payee an amount equal to the misused benefits less any amount we
> collected from the misuser and repaid to you.
>
> (c) Whether or not we have obtained restitution from the misuser, we will repay benefits

> in cases when we determine that an individual representative payee serving 14 or fewer beneficiaries misused benefits and our negligent failure in the investigation or monitoring of that representative payee results in the misuse. When we make restitution, we will pay you or your alternative representative payee an amount equal to the misused benefits less any amount we collected from the misuser and repaid to you.

20 C.F.R. § 416.641 (2006).  The modification of 20 C.F.R. § 416.641 did not alter the remedial framework of the Social Security Act.  Instead, when read in the context of statutory framework set forth in 42 U.S.C. § 1383(a)(2), it becomes evident that both versions of 20 C.F.R. § 416.641 are most reasonably read as indicating that representative payees who misuse benefit funds are liable to the Social Security Administration and not to the beneficiaries themselves. *See* 42 U.S.C. §§ 1383(a)(2)(E) and 1383(a)(2)(H)(I); 20 C.F.R. § 416.641.

Accordingly, the Court finds that the remedial scheme articulated by Congress, under the representative payee provisions of the Social Security Act, does not provide a private cause of action. *See* 42 U.S.C. § 1383(a)(2); *Alexander*, 532 U.S. at 290 (noting that "some remedial schemes foreclose a private cause of action to enforce even those statutes that admittedly create substantive private rights").  The Court, therefore, finds that Plaintiffs JM and JE's Eleventh Cause of Action must be dismissed.

**IV.     Conclusion.**

Under § 504 of the Rehabilitation Act and the Medicaid Act, a private right of action, if available at all, is only available against the recipients of federal funding, precluding any claims against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities.  Plaintiffs JM and JE cannot state a claim under Title II of the Americans with Disabilities Act against Defendants Sandoval, Adams, Mateju, Schaefer, or Does 1-10, in their individual capacities, upon which relief can be granted.  The representative payee provisions of the Social Security Act do not provide a private cause of action.

WHEREFORE,

IT IS ORDERED that Defendants' Joint Motion to Dismiss Plaintiffs' Second, Third, Fourth, and Eleventh Causes of Action is GRANTED.


_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE

10