IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JM, through her next friend John Foley, and
JE, through her next friend Maria Fellin,
on her own behalf and on behalf of a class of
all other similarly-situated persons,**

       Plaintiffs,

vs.                                                                                                NO. CIV 07-0604 RB/ACT

**NEW MEXICO DEPARTMENT OF HEALTH,
et al.,**

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Beth Schaefer's Motion to Dismiss the Second Amended Complaint and For Qualified Immunity, filed on December 30, 2008. Jurisdiction is founded upon 28 U.S.C. § 1331. Pursuant to a Memorandum Opinion and Order issued by this Court on December 31, 2008, Plaintiffs JM and JE's Twelfth and Thirteenth Causes of Action were dismissed on summary judgment (Doc. 194). Noting that Ms. Schaefer did not begin working for the Los Lunas Hospital and Training School until after July 1, 1976, Plaintiffs JM and JE agreed to dismiss their Fourteenth Cause of Action as to Ms. Schaefer (Doc. 213). In addition, because Ms. Schaefer began working at the Training School on September 21, 1976, after JE was discharged from state custody by Court Order in 1972, Plaintiff JE agreed to dismiss all claims for damages against Ms. Schaefer in her individual capacity (Doc. 213). Having considered the submissions of the parties, including those submitted in connection to Ms. Schaefer's Motion to Dismiss and For Qualified Immunity, filed on May 9, 2008, and being otherwise fully advised, Defendant Schaefer's Motion to Dismiss and For Qualified Immunity is

**GRANTED IN PART AND DENIED IN PART**.

**I.     Background.**

The following background narrative is based on Plaintiffs JM and JE's allegations, which, at this stage of the litigation, have not been substantiated. However, for purposes of analyzing Ms. Schaefer's Motion to Dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the Plaintiffs' well-pleaded allegations as true. *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

JM is developmentally disabled. In 1963, when JM was six years old, she was committed by Court Order to the Los Lunas Hospital and Training School. Defendants Dan Sandoval, Roger Adams, Joseph Mateju, Beth Schaefer, and Does 1-10 (hereinafter "Defendants") allegedly shuttled her among various state-owned or state-funded facilities, without court permission, between 1964 and 1974. JM alleges that, while in state custody, she was verbally and physically abused. Defendants allegedly misappropriated JM's disability checks and neglected to provide her with necessary educational, vocational, or psychological services. In the late 1970s, JM alleges that Defendants recklessly transferred her, without judicial authority, from a group home in Albuquerque to unlicensed private third party businesses where she was economically exploited and deprived of her disability checks. Defendants, acting as administrators of Los Lunas, also allegedly conspired to discharge JM from state custody to unlicensed private third party businesses. Defendants allegedly made false representations to the state court regarding JM's condition and well-being, and JM was discharged *ex parte* from state custody by Court Order on June 29, 1979. Despite JM's alleged inability to care for herself, Defendants allegedly abandoned her and failed to monitor her health

and welfare, to provide the services she required, or to designate a legally recognized surrogate decision-maker to assist her and protect her legal rights.

JE is also developmentally disabled.  In 1963, when JE was twenty years old, she was committed by Court Order to the Los Lunas Hospital and Training School.  JE alleges that, after 1963, Defendants transferred her to a different state facility, without court permission, failed to provide her with the Supplemental Security Income to which she was entitled, neglected to provide her with education, vocational training, or needed therapies, and required her to perform labor without pay.  Plaintiffs allege that Defendants recklessly consigned JE to the custody of private third party businesses, where she was economically exploited and deprived of her disability checks.  Defendants, acting as administrators of the Training School, allegedly conspired to discharge JE from state custody to unlicensed private third party businesses. Defendants allegedly made false representations to the state court regarding JE's condition and well-being, and JE was discharged *ex parte* from state custody by Court Order in 1972.  Despite JE's alleged inability to care for herself, Defendants allegedly abandoned her and failed to monitor her health and welfare, to provide her with the services she required, or to designate a legally recognized surrogate decision-maker to assist her and protect her legal rights.

Plaintiffs JM and JE alleged that Ms. Schaefer, acting under color of law, and in her individual capacity as an attorney at the Los Lunas Hospital and Training School, violated Plaintiffs' Fourteenth Amendment procedural and substantive due process rights and Thirteenth Amendment right to be free from involuntary servitude.  Ms. Schaefer allegedly personally participated in a conspiracy to place JM and JE with unlicensed private third party businesses, knowing that they would be economically exploited and denied necessary medical care, humane

3

living conditions, and other required treatment. Ms. Schaefer allegedly participated in economically exploiting JM and JE by arranging to have their federal entitlement payments, including Supplemental Security Income and Medicare payments, transferred to third parties without ensuring that the money was properly accounted for and spent on behalf of the Plaintiffs. Ms. Schaefer allegedly conspired with the other Defendants to deceive the state court as to JM and JE's condition, welfare, and ability to care for themselves, and thereby, deprived JM and JE of the care and protection they needed. Ms. Schaefer also is alleged to have endangered JM and JE by recklessly failing to provide them with the discharge services they required as developmentally disabled individuals, including assigning guardians or surrogate decision-makers who could protect their legal rights and arranging for JM and JE to receive necessary respite care.

Ms. Schaefer seeks to dismiss Plaintiffs JM and JE's Fourteenth Amendment substantive and procedural due process claims and Thirteenth Amendment involuntary servitude claims, arguing that Plaintiffs have failed to make sufficient factual allegations to state a claim against her upon which relief can be granted and that she is also entitled to qualified immunity. Plaintiffs JM and JE counter that their factual allegations against Ms. Schaefer adequately support their claims against her and that she is not entitled to qualified immunity because her acts violated Plaintiffs JM and JE's clearly established federal rights.

**II.    Rule 12(b)(6) Standard.**

A claim for relief may be dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). For purposes of analyzing a motion to dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the well-pleaded allegations of the complaint as true and

must construe them in the light most favorable to the Plaintiff. *David*, 101 F.3d at 1352. The Court must also look for plausibility in the complaint; in other words, the complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

**III.    Discussion.**

The Court recognizes that Plaintiff JE has dismissed all claims for damages against Ms. Schaefer in her individual capacity. The Court wishes to make it clear that all of Plaintiff JE's claims against Ms. Schaefer are dismissed with prejudice for failure to state a claim upon which relief can be granted. Plaintiff JE was discharged from state custody by Court Order in 1972. Ms. Schaefer began working at the Training School on September 21, 1976, after JE was discharged from state custody. Plaintiff JE's allegations against Ms. Schaefer, therefore, are implausible and cannot form the basis for *any* claim for relief. *See* Fed.R.Civ.P. 12(b)(6); *Twombly*, 127 S.Ct. at 1965.

42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege a deprivation of a federal right and that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs allege that Ms. Schaefer, acting under color of law, violated JM's substantive and procedural due process rights. Ms. Schaefer, relying on *Beedle v. Wilson*, argues that the conduct of an attorney acting in her professional capacity does not constitute action under color of state law for purposes of § 1983. 422 F.3d 1059, 1072-73 (10th Cir. 2005). A correct articulation of the Tenth Circuit's holding in *Beedle* is that the

conduct of a *private* attorney acting in her professional capacity does not constitute action under color of state law for purposes of § 1983. *Id.* Because Ms. Schaefer was a public official who allegedly abused her official power, there is no question that her alleged conduct would have been under color of state law. *See Monroe v. Pape*, 365 U.S. 167, 184 (1961) overruled in part on other grounds, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 695-701 (1978).

Procedural due process is a flexible doctrine and calls for such procedural protections as the particular situation demands; the quantum and quality of the process due in a particular situation depends on the need to serve the due process function of minimizing the risk of error in decision-making. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). A person alleging that she has been deprived of her right to procedural due process must prove two elements: that she possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and that she was not afforded an appropriate level of process. *See Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970).

Plaintiffs allege that Ms. Schaefer, acting in concert with the other Defendants, deprived JM of procedural due process by placing her with unlicensed third party businesses without judicial authority or any other process whatever. The Court determines that JM had a protected liberty interest in safe conditions of confinement which was violated by her alleged placement in private settings, where she allegedly was economically exploited. *See Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982). The Court also concludes that JM had a property interest in the educational benefits, care, and treatment which she was entitled to receive at the Training School during the period of time she was committed to state custody; JM was allegedly deprived of this

property interest by being sent to unlicensed third party settings. *See Goss v. Lopez*, 419 U.S. 565, 573 (1975); *Youngberg*, 457 U.S. at 324. Because JM allegedly was not afforded any process in connection with the alleged deprivations of her liberty and property interests, there can be no question that Plaintiffs sufficiently alleged that JM was not afforded the appropriate level of process. *See Mathews*, 424 U.S. at 333-35. The Court, therefore, concludes that Plaintiffs' allegations regarding deprivations of JM's procedural due process rights, which occurred during the time she was in state custody, are sufficient to state a procedural due process claim, pursuant to § 1983, against Ms. Schaefer upon which relief can be granted.

Plaintiffs also allege that JM had a property interest in the care and treatment she received in state custody of which she was deprived as a result of being discharged from state custody by Court Order. The Supreme Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. *See Addington v. Texas*, 441 U.S. 418, 425 (1979). There is, however, no right to be committed to or remain in state custody. *See O'Connor v. Donaldson*, 422 U.S. 563, 574-75 (1975); *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). In fact, even if a mentally disabled individual's placement in state custody is initially founded upon a constitutionally adequate basis, it cannot continue after that basis no longer exists. *O'Connor*, 422 U.S. at 574-75. Significantly, JM was discharged from state custody as a result of a judicial proceeding presided over by a state court judge. The Court is disturbed by Plaintiffs' allegations that Ms. Schaefer participated in a scheme to mislead the state court regarding JM's well-being and ability to function outside of state custody. The Court is also disconcerted by Plaintiffs' allegations that JM was not notified of the discharge proceedings and not represented at these proceedings.

However, the Court can find no legal authority for imposing personal liability for damages on Ms. Schaefer for the allegedly flawed process provided by a state court. JM, therefore, cannot maintain a claim for deprivation of procedural due process against Ms. Schaefer, in her personal capacity, based on allegations that JM's discharge proceedings in state court were constitutionally flawed.

Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations "without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotations omitted). The constitutional protections of substantive due process only apply to transgressions above and beyond those covered by the ordinary civil tort system; the two are not coterminous. *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). Indeed, what differentiates a constitutional deprivation of substantive due process from an ordinary common law tort is a "level of executive abuse of power" that "shocks the conscience." *County of Sacramento*, 523 U.S. at 846. "In other words, the executive abuse represents arbitrary action of government and requires a showing of government officials abusing their power, or employing it as an instrument of oppression." *Williams*, 519 F.3d at 1220 (quotations omitted).

State officials are generally not required to provide care and protection to individuals. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 201 (1989). However, when the state assumes control over an individual, a special relationship is triggered that places an affirmative duty on state officials to provide protection to the individual. *See Id.* at 199-200. In this case, JM was placed in state custody by Court Order, which created a special relationship

8

that required Ms. Schaefer, within the scope of her employment as a state official, to affirmatively protect JM from harm. *See Id.* Furthermore, because JM has developmental disabilities, Ms. Schaefer also had a duty, within the scope of her employment as a state official, to take actions that would promote JM's well-being. *See Youngberg*, 457 U.S. at 322.

The Supreme Court has instructed that a "professional judgment" standard is to be applied to the substantive due process claims of mentally disabled individuals in state custody. *See Id.* Under this professional judgment standard, state officials are shielded from liability unless a mentally disabled plaintiff can demonstrate that the state official failed to exercise professional judgment with respect to the care and treatment the mentally disabled plaintiff received. *Id.* at 323. In addition, the exercise of professional judgment may be excused if the failure to satisfy the normal professional standards is justified by budgetary constraints. *Id.* Failure to exercise professional judgment requires more than mere negligence; instead, it requires an abdication of professional responsibility. *Yvonne L v. New Mexico Dept. of Human Services*, 959 F.2d 883, 894 (1992). Additionally, such an abdication of professional responsibility must be sufficient to "shock the conscience." *County of Sacramento*, 523 U.S. at 846. In relation to the placement of a mentally disabled individual in state custody into private third party settings, the standard is similar to that of the placement of children into a foster care setting. *See Yvonne L.*, 959 F.2d at 893-94. Only if state officials place a mentally disabled individual in a setting they know to be dangerous or otherwise unfit, without justification based either on financial constraints or on considerations of professional judgment, do they expose themselves to personal liability in damages. *See Youngberg*, 457 U.S. at 322-23; *Yvonne L.*, 959 F.2d at 893-94.

JM's substantive due process claims are based on allegations that Ms. Schaefer, acting within the scope of her employment as a state official, was recklessly indifferent to the welfare of JM, failing to provide the protection and care she needed.  Plaintiffs also allege that Ms. Schaefer's failure to provide JM with the care and services she required as a developmentally disabled individual constituted an unjustified abdication of professional responsibility. Plaintiffs further allege that Ms. Schaefer personally participated in the decision to place JM in settings that were dangerous and otherwise unfit, committing JM to the custody of private third party businesses, without judicial process and without representation, knowing that JM would be exploited economically and deprived of the care and protection she required.  Finally, Plaintiffs allege that Ms. Schaefer, with reckless indifference, abdicated her professional responsibility as an attorney by conspiring to deceive the state court regarding JM's personal welfare and capacity to function outside of state custody, and eventually abandoned JM to be exploited without anyone to care for her or protect her legal rights.  These allegations, which the Court must accept as true, are sufficient to shock the conscience and to state a claim against Ms. Schaefer, in her individual capacity, pursuant to § 1983, for violation of JM's substantive due process rights. *County of Sacramento*, 523 U.S. at 846.

The Supreme Court has defined the Thirteenth Amendment's prohibition of involuntary servitude as a ban on compulsory labor enforced by the threatened use of physical or legal coercion. *U.S. v. Kozminski*, 487 U.S. 931, 944 (1988).  However, "[t]he guarantee of freedom from involuntary servitude has never been interpreted specifically to prohibit compulsion of labor by other means, such as psychological coercion." *Id.*  The Supreme Court has further instructed that "it is possible that threatening an incompetent with institutionalization or an

10

immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude, even though such a threat made to an adult citizen of normal intelligence would be too implausible to produce involuntary servitude." *Id.* at 948.  Plaintiffs allege that Ms. Schaefer participated in a conspiracy to subject Plaintiff JM to involuntary servitude by placing her in third party settings where she was deprived of her federal benefits and forced to labor without compensation. Plaintiffs allege that JM was abused and forced to work in these third party settings under the threat that she would be returned to an institution if she did not obey orders. Plaintiff JM's allegations are sufficient to state a claim against Ms. Schaefer, in her individual capacity, pursuant to § 1983, for violation of JM's Thirteenth Amendment right to be free from involuntary servitude.

State and local officials who carry out executive or administrative functions are entitled to assert the defense of qualified immunity. *See Brosseau v. Haugen*, 543 U.S. 194, 194-97 (2004). Qualified immunity will protect a public official who has violated a plaintiff's federally protected rights so long as the official did not violate clearly established federal law. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  The related standards for qualified immunity are whether the public official acted in an objectively reasonable manner and whether the public official had fair warning that his or her conduct violated a federal law. *United States v. Lanier*, 520 U.S. 259, 270 (1997).  Indeed, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Therefore, when qualified immunity is asserted as a defense, the critical issue is whether the public official violated a federally protected right that was clearly established at the time he or she acted. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A federally protected right is clearly

established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson*, 483 U.S. at 640.

In determining whether Ms. Schaefer is entitled to qualified immunity in this case, the Court must first identify the legal contours of due process during the late 1970s. *Harlow*, 457 U.S. at 818.  The Court will first address the legal contours of the doctrine of procedural due process in the late 1970s.  JM's liberty interests in safe conditions of confinement and freedom from economic exploitation were clearly established in the late 1970s. *See Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977); *Hutto v. Finney*, 437 U.S. 678, 685-87 (1978); *Youngberg*, 457 U.S. at 324.  The Court also concludes that JM's property interests in the educational benefits, care, and treatment which she was entitled to receive at the Training School, during the period of time she was committed to state custody, was also clearly established in the late 1970s. *See Goss*, 419 U.S. at 573.  It is unnecessary for the Court to determine what process was due in the context of JM's transfer from the Training School to unlicensed private third party settings, during the period of time in which she was in state custody, because Plaintiffs allege JM received no process whatsoever.  At least some modicum of process was due to minimize the risk of error in placing JM in a setting in which she was allegedly economically exploited and deprived of the care and treatment to which she was entitled while in state custody. *See Mathews*, 424 U.S. at 334-35.  Because Ms. Schaefer had fair warning that JM was entitled to some level of process in connection with her transfer from the Training School to unlicensed third party businesses, during the period of time in which JM was in state custody, the Court determines that Ms. Schaefer is not entitled to qualified immunity on this procedural due process claim. *See Lanier*, 520 U.S. at 270.

The Supreme Court first provided a detailed articulation of the legal contours of the substantive due process rights of mentally disabled individuals in state custody in 1982, in its landmark opinion in *Youngberg v. Romeo. Youngberg,* 457 U.S. at 307.  Prior to 1982, however, the legal contours of the substantive due process rights of mentally disabled individuals in state custody included the right to reasonable safety, adequate food, shelter, clothing, and medical care. *See Ingraham*, 430 U.S. at 673-74; *Hutto*, 437 U.S. 678, 685-87; *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (noting that failure to provide medical care can be a violation of a prisoner's constitutional rights); *Youngberg*, 457 U.S. at 324 (noting that the state conceded a duty to provide adequate food, shelter, clothing, and medical care and that the Supreme Court found an unquestionable duty to provide reasonable safety).

Ms. Schaefer's alleged conduct deprived Plaintiff JM of her substantive due process rights to reasonable safety and essential medical care. *See Youngberg*, 457 U.S. at 324;  *Estelle*, 429 U.S. at 104-05.  The legal contours of the doctrine of substantive due process were sufficiently clear in the late 1970s to give state officials fair warning that it violated federal law to recklessly endanger developmentally disabled individuals by committing them to the custody of unlicensed third party businesses, where they would be economically exploited and deprived of essential medical care. *See Harlow*, 457 U.S. at 818; *Youngberg*, 457 U.S. at 324;  *Estelle*, 429 U.S. at 104-05.  Indeed, based on Plaintiffs' allegations, which the Court must accept as true, Ms. Schaefer's alleged actions clearly constituted violations of federal law of which she would have had fair warning. *See David*, 101 F.3d at 1352*; County of Sacramento*, 523 U.S. at 846; *Youngberg*, 457 U.S. at 324;  *Estelle*, 429 U.S. at 104-05.  Ms. Schaefer, therefore, is not entitled to qualified immunity to Plaintiff JM's substantive due process claims.

The legal contours of the Thirteenth Amendment right to be free from involuntary servitude were well established prior to the 1970s. *See Slaughter-House Cases*, 83 U.S. 36, 71-72 (1872). Thus, state officials would have had fair warning in the 1970s that it violated federal law to subject mentally disabled individuals to involuntary servitude by placing them in third party settings where they would be deprived of their federal benefits and forced to labor without compensation under threat of abuse or reinstitutionalization. *See Harlow*, 457 U.S. at 818; *Slaughter-House Cases*, 83 U.S. at 71-72; *Kozminski*, 487 U.S. at 948. Ms. Schaefer, therefore, is not entitled to qualified immunity to Plaintiff JM's involuntary servitude claim.[1]

**IV.    Conclusion.**

Plaintiff JE's allegations against Ms. Schaefer are implausible and cannot form the basis for any claim for relief. Plaintiffs' allegations regarding violations of JM's procedural due process rights, which occurred during the time she was in state custody, are sufficient to state a procedural due process claim, pursuant to § 1983, against Ms. Schaefer. JM, however, cannot maintain a claim for deprivation of procedural due process against Ms. Schaefer, in her personal capacity, based on allegations that JM's discharge proceedings in state court were constitutionally flawed. Plaintiffs' allegations are sufficient to state a claim against Ms. Schaefer, in her individual capacity, pursuant to § 1983, for violation of JM's substantive due process rights. Plaintiffs' allegations also are sufficient to state a claim against Ms. Schaefer, in her individual capacity, pursuant to § 1983, for violation of JM's Thirteenth Amendment right to be free from involuntary servitude. Ms. Schaefer is not entitled to qualified immunity to JM's

---

[1] The Court notes that Ms. Schaefer is able to once again raise the defense of qualified immunity on a motion for summary judgment. *See Weigel v. Broad*, 544 F.3d 1143, 1150-51 (2008).

procedural and substantive due process claims, nor is she entitled to qualified immunity to JM's involuntary servitude claim.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Schaefer's Motion to Dismiss and For Qualified Immunity is **GRANTED IN PART AND DENIED IN PART**.

                                                         **ROBERT C. BRACK**
                                                         **UNITED STATES DISTRICT JUDGE**