IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JM, through her next friend John Foley, and
JE, through her next friend Maria Fellin,
on her own behalf and on behalf of a class of
all other similarly-situated persons,**

       **Plaintiffs,**

vs.                                      **NO. CIV 07-0604 RB/ACT**

**NEW MEXICO DEPARTMENT OF HEALTH,
et al.,**

       **Defendants.**

### MEMORANDUM OPINION AND ORDER

       **THIS MATTER** came before the Court on Plaintiffs' Motion for Partial Reconsideration of the Court's Order Dismissing Plaintiffs' Third Cause of Action for Alleged Violations of the Americans with Disabilities Act (hereinafter "ADA"), filed January 21, 2009. Jurisdiction is founded upon 28 U.S.C. § 1331. Having considered the submissions of the parties, relevant law, and being otherwise fully advised, Plaintiffs' Motion for Partial Reconsideration is **DENIED**.

**I.**      **Background.**

       The following background narrative is based on Plaintiffs JM and JE's allegations, which, at this stage of the litigation, have not been substantiated. In 1963, when JM was six years old, she was committed by Court Order to the Los Lunas Hospital and Training School. JM alleges that Defendants shuttled her among various state-owned or state-funded facilities, without court permission, between 1964 and 1974. She alleges that she was verbally and physically abused, denied federal benefits to which she was entitled, and that Defendants neglected to provide her with necessary educational, vocational, or psychological services. In

1977, JM alleges that she was transferred, without judicial authority, from a group home in Albuquerque to a retirement home for elderly women and then to the household of the owner of the retirement home, where she was required to perform free labor. JM was discharged from state custody by Court Order in 1979. She alleges that Defendants essentially abandoned her, failing to monitor her health and welfare, to provide the services she required, or to designate a legally recognized surrogate decision-maker to assist her and protect her legal rights.

In 1963, when JE was twenty years old, she was committed by Court Order to the Los Lunas Hospital and Training School. JE alleges that, after 1963, Defendants transferred her to a different state facility without court permission, failed to provide her with the Supplemental Security Income to which she was entitled, neglected to provide her with education, vocational training, or needed therapies, required her to perform labor without pay, and eventually consigned her to the custody of third parties outside her family. JE was discharged from state custody by Court Order in 1972. JE alleges that the state improperly discharged her from custody, without her consent, without appointing a guardian to help her with decision-making, and without arranging for any of the critical services to which she was legally entitled.

Plaintiffs alleged in their Third Cause of Action that Defendants violated their rights secured under the ADA. Plaintiffs' Third Cause of Action also includes claims for declaratory and injunctive relief based on violations of the ADA. On October 24, 2008, Defendants filed their Motion to Dismiss Plaintiffs' Third Cause of Action for Alleged Violations of the ADA. After the matter was fully briefed, the Court–noting that the ADA became effective in 1992 and that Plaintiffs JM and JE were discharged from state custody by Court Order in 1979 and 1972, respectively–issued its Memorandum Opinion and Order of January 7, 2009, dismissing

Plaintiffs' Third Cause of Action. On January 21, 2009, Plaintiffs filed their Motion for Partial Reconsideration.

## II.     Standard of Review.

A motion for reconsideration filed prior to final judgment is "nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 fn. 1 (10th Cir. 1991). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* A motion for reconsideration is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

## III.    Discussion.

Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). Plaintiffs' Motion for Reconsideration is in connection with Defendants' Motion to Dismiss, under Rule 12(b)(6). The Court, therefore, excludes all materials outside the pleadings which were presented by Plaintiffs. *Id.*

Plaintiffs suggest that the Court erred in dismissing their Third Cause of Action for violations of the ADA for the following reasons: (1) Defendants did not request dismissal of

Plaintiffs' requests for declaratory and prospective injunctive relief to remedy ongoing violations of the ADA, and (2) Plaintiffs alleged facts sufficient to establish *prima facie* ongoing violations of the ADA.

Plaintiffs' suggestion that Defendants failed to request dismissal of all claims relative to Plaintiffs' Third Cause of Action is entirely without merit. It is sufficient for the Court to merely reference the title of Defendants' motion, "Defendants' Joint Motion to Dismiss Plaintiffs' Third Cause of Action for Alleged Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq*." (Doc. 175). Indeed, Defendants specifically stated in their motion that they "hereby move this Court for an Order dismissing Plaintiffs' Third Cause of Action for alleged violations of the Americans with Disabilities Act" (Doc. 175). After considering the submissions of the parties and relevant law, the Court issued its Memorandum Opinion and Order of January 7, 2009 dismissing Plaintiffs' Third Cause of Action, which clearly entailed the dismissal of all of Plaintiffs' claims based on alleged violations of the ADA.

Plaintiffs also failed to set forth sufficient factual allegations to raise JM and JE's right to relief, under the ADA, above the speculative level. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). 42 U.S.C. § 12132 provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* Thus, in order to state a claim under Title II of the ADA, a plaintiff must allege that (1) she is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability. *Robertson v. Las*

*Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

The Second Amended Complaint, however, is devoid of well-pleaded factual allegations which plausibly assert that Plaintiffs JM and JE were discriminated against or excluded from participation in or denied the benefits of the services, programs, or activities of a public entity after the ADA became effective in 1992. *See* 42 U.S.C. § 12132. There are no factual assertions in the Second Amended Complaint alleging that Plaintiffs JM or JE applied for and were denied affirmative assistance from Defendants after 1992. *See Robertson*, 500 F.3d at 1197; 42 U.S.C. § 12132. The Second Amended Complaint is also devoid of factual allegations asserting that Defendants withdrew assistance or benefits from Plaintiffs JM or JE after 1992. *See Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175 (10th Cir. 2003). Furthermore, there is no claim that Plaintiffs JM and JE were discriminated against by virtue of being unjustifiably isolated in an institutional setting by Defendants after 1992. *See Olmstead v. Zimring*, 527 U.S. 581, 587 (1999).

Plaintiffs' Third Cause of Action for violations of the ADA boils down to allegations that Defendants discriminated against Plaintiffs JM and JE by inducing a state judge to discharge them from state custody and then failing to provide JM and JE with appropriate discharge services. These alleged acts of discrimination clearly took place in 1979 and 1972, respectively, well before Title II of the ADA had become the law. *See* 42 U.S.C. § 12131, *et seq*. Plaintiffs, however, argue that JM and JE's isolation, resulting from their placement in private third-party settings, constituted ongoing discrimination, which became a cognizable claim under the ADA, after Title II of the statute became effective in 1992. In other words, Plaintiffs' Third Cause of Action is based on the theory that Defendants discriminated against JM and JE by failing to

5

locate and affirmatively provide them with services more than a decade–approximately thirteen years and twenty years, respectively–after they had been discharged from state custody by Court Order.

Plaintiffs' theory of discrimination is apparently based on an expansive reading of the Supreme Court's opinion in *Olmstead v. Zimring*, 527 U.S. 581 (1999). In *Olmstead*, a highly fractured Supreme Court held that "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Id.* at 600. Thus, the Supreme Court promoted deinstitutionalization by taking the qualified position that the ADA may require placement of persons with mental disabilities in community settings rather than in institutions. *Id.* at 587. In so holding, the majority specifically noted: "We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities." *Id.* at 603 fn. 14 (internal quotations omitted).

Plaintiffs' theory of discrimination turns *Olmstead* on its head, proposing that the unjustified or improper deinstitutionalization of persons with disabilities is a form of discrimination. Notably, Justices Kennedy and Breyer, in their concurrence in the judgment, expressed their reservations regarding deinstitutionalization, especially their concern that "for fear of litigation" states may "drive those in need of medical care and treatment out of appropriate care and into settings with too little assistance and supervision." *Id.* at 610 (Justices Kennedy and Breyer concurring in the judgment). Noting this concern, Justices Kennedy and Breyer admonished courts to apply the majority's opinion in *Olmstead* "with great deference to the medical decisions of the responsible, treating physicians, and ... with appropriate deference to

the program funding decisions of state policymakers." *Id.* (concurring in judgment).

Without addressing the merits of Plaintiffs' theory of discrimination, the Court notes that Plaintiffs' Third Cause of Action is fatally flawed because (1) the alleged acts of discrimination against JM and JE occurred more than a decade prior to the effective date of the ADA, and (2) the Court rejects Plaintiffs' ongoing violation theory. Reiterating the Court's conclusion in its January 7, 2009 Memorandum Opinion and Order, Plaintiff JM was discharged from state custody by Court Order in 1979, and Plaintiff JE was discharged from state custody by Court Order in 1972. Being discharged from state custody by Court Orders fundamentally altered JM and JE's relationship with the state. Indeed, a special relationship and the accompanying affirmative duty to protect arises not from the state's knowledge of an individual's predicament or special susceptibility to harm, but from the limitation imposed by the state on an individual's freedom to act. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). The basis of a special relationship is that the state has some sort of control or custody over the individual, as in the following cases: prisoners, involuntarily committed mentally ill persons, and foster children. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). After Plaintiffs JM and JE were discharged from state custody, they no longer had a special relationship with the state. *See Id.* In addition, the acts alleged by Plaintiffs JM and JE in their Second Amended Complaint against the Defendants occurred more than a decade prior to the effective date of the Americans with Disabilities Act. *See* 42 U.S.C.A. § 12131. Plaintiffs JM and JE, therefore, failed to state a claim against any of the Defendants upon which relief could be granted, including a claim for declaratory and injunctive relief, under the Americans with Disabilities Act. *See Twombly*, 127 S.Ct. at 1964-65 (noting that a plaintiff's obligation to

provide ground for their entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

As a final point, contrary to the tenor of Plaintiffs' initial argument, it is irrelevant, for purposes of this motion, that putative class members may have cognizable claims for ongoing violations of the ADA. The only relevant inquiry is whether Plaintiffs JM and JE have set forth sufficient factual allegations to plausibly raise *their* right to relief, under the ADA. *See Twombly*, 127 S.Ct. at 1965. Indeed, if Plaintiffs JM and JE do not have cognizable claims under the ADA, they cannot fairly and adequately represent the proposed class. *See* Fed.R.Civ.P. 23(a) (noting the requirements of typicality and adequacy of representation).

## IV.   Conclusion.

The Court remains unpersuaded that Plaintiffs can state a claim, pursuant to Title II of the ADA, based on their ongoing violation theory. Indeed, because Defendants' alleged discriminatory acts against JM and JE occurred prior to the effective date of the ADA, Plaintiffs cannot plausibly state a claim against any of the Defendants upon which relief could be granted, under the Americans with Disabilities Act. *See Twombly*, 127 S.Ct. at 1965; 42 U.S.C. § 12131, *et seq*.

**WHEREFORE,**

   **IT IS ORDERED** that Plaintiffs' Motion for Partial Reconsideration is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**