IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JM, through her next friend John Foley, and
JE, through her next friend Maria Fellin,
on their own behalf and on behalf of a class of
all other similarly-situated persons,

                Plaintiffs,

v.                                                                               No. CIV 07-604 RB/ACT

NEW MEXICO DEPARTMENT OF
HEALTH, *et al.,*

                Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

**THIS MATTER** is before the Court on a Notice of Non-Appearance of Bert Dennis ("Ms. Dennis") for her Deposition [Doc. 75] and a related Motion for Protective Order regarding Ms. Dennis's deposition [Doc. 76], filed May 29, 2008 by Defendants New Mexico Department of Health, Los Lunas Center for Persons with Developmental Disabilities, Dan Sandoval, Roger Adams, Joseph Mateju, Michelle Lujan-Grisham, Steve Dossey, Deborah Armstrong and Does 1-10 ("Defendants").[1] The Motion is fully briefed [Doc. Nos. 77, 111, 127] and ready for resolution, without the need for a hearing. After careful consideration of the pertinent law, argument by counsel

---

[1] This motion was fully briefed as of July 10, 2008. However, on June 5, 2008, the Court stayed all discovery pending disposition of Defendants' motions to dismiss based on qualified immunity. [Doc. 90.] Now that the stay has been lifted as a result of the Court's resolution of the pertinent motions, this motion for protective order may be decided. The Court is aware that the discovery deadline set forth in the Order Adopting Joint Status Report and Provisional Discovery Plan with Changes and Setting Case Management Deadlines [Doc. 42] has expired. The Court will schedule a Rule 16 Discovery Status Conference to establish new case management deadlines.

and attachments to the pleadings, the Court concludes that Defendants' Motion for Protective Order should granted in part and denied in part.

## General Background

On April 6, 2007, Plaintiffs filed this lawsuit, and on June 21, 2007, this case was removed to federal court. [Doc. 1.] Plaintiffs, former residents of state institutions for persons with developmental disabilities, bring this action on behalf of a proposed class of people with disabilities who were placed in state institutions and who then were removed from the institutions over a period of two decades and placed into substitute facilities. [Doc. 187, Second Amended Complaint for Class Action Injunctive and Declaratory Relief and for Individual Damages.] Plaintiffs allege, in part, that Defendants abandoned these residents without proper discharge, planningor monitoring services that they required, or protections against abuse and neglect. [Id.] Plaintiffs further contend that many of these persons have never been adequately identified or located despite State Defendants' knowledge of their existence since about October 2003. [Id.] Defendants deny allegations of any unlawful conduct and assert that they met their duties to the named Plaintiffs.

Since the filing of this Motion, the Court has ruled on various motions. The Court granted Defendants' Motion to Stay Decision on Class Certification and Appointment of Class Counsel [Doc. 199] The Court denied Defendant's Joint Motion to Dismiss Plaintiffs' Twelfth, Thirteenth, and Fourteenth Causes of Action [Doc. 195] and Defendants' Motion to Dismiss Substantive Due Process Claim on the Basis of Qualified Immunity [Doc. 198]. The Court dismissed some claims in granting Defendants' Joint Motion to Dismiss Plaintiffs' Third Cause of Action [Doc. 197] and Defendants' Joint Motion to Dismiss Plaintiffs' Second, Third, Fourth and Eleventh Causes of action [Doc. 200]. In ruling on Defendant's Joint Motion for Summary Judgment on Tort Claims Act and Negligence Claims on the Basis of the Statute of Limitations, the Court ruled that:

> Plaintiff JE cannot state a claim upon which relief can be granted under the Tort Claims Act. Plaintiff JM's causes of action under the Tort Claims Act are barred by the statute of limitations. With respect to JM and ME's claims that arose prior to the enactment fo the Tort Claims Act, the issue of whether JM and JE have been continuously incapacitated, for purposes of tolling the statute of limitations, since their respective discharges from state custody remains a question of material fact.

[Doc. 194 at 9].

## Procedural Background

Before the Court stayed discovery, the parties discussed possible deponents and dates for depositions. In an email to Defendants, dated May 19, 2008, Plaintiffs listed Bert Dennis ("Ms. Dennis") as a deponent. [Doc. 77, Ex. E.] Ms. Dennis stated in an affidavit that she is employed at the Department of Health as a social and community coordinator. [Doc. 77, Ex. J.] She further testified that she was contacted in November 2007 by defense counsel to assist them in the investigation and defense of claims brought by Plaintiffs in this lawsuit. [Id.] Dennis did not provide information in her affidavit regarding how long she had worked for the Department of Health or what other positions, if any, she held.

Upon learning that Plaintiffs intended to depose Ms. Dennis, defense counsel stated that objections could be anticipated as to potential deposition testimony from "perhaps Bert Dennis" as "[she was] involved in defense counsels' investigation of the allegations made in Plaintiffs' complaint." Defense counsel further noted that certain areas of inquiry at the deposition might be precluded because of "Attorney/Work Product, and Attorney/Client Communication Privilege." Defendants sought to streamline resolution of these issues by requesting that Plaintiffs identify the areas of inquiry they anticipated addressing at Ms. Dennis's deposition. [Doc. 77, Ex. F.]

On May 27, 2008, Plaintiffs' counsel wrote an email to defense counsel stating, in pertinent part:

3

> As you requested, I am sending you the questions that seem most likely to be pertinent to your assertion that Ms. Dennis is working for you in your capacity as a defense lawyer in this case and not as a regular Department of Health staff member. There will be other questions asked, as well, but these are the ones most pertinent to your emailed request.

[Doc. 77, Ex. G.]

The partial list provided to defense counsel is extensive and detailed. The following section contains some topics as listed and summaries of some areas of inquiry. The partial list as provided by Plaintiffs is contained in Document 77, Ex. G.

> 1. Describe the actions taken by you or by any other agent of the State of New Mexico since 1/1/03 to ascertain what has happened to people with developmental disabilities, who were discharged from any state-operated facility after January 1, 1970, including but not limited to:
>
>> a. everything done to coordinate with Robert Schwartz, Rocky Nogales, Nancy Long, Robert Casey, Robert Caswell Investigations, the New Mexico Aging and Long Term Services Department and/or their agents to find, assess or assist people with a developmental disability discharged from any state-operated facility;
>>
>> b. everything done since 1/1/03 to find, assess or assist people with a developmental disability discharged from any state-operated facility;
>>
>> c. the particular documents that discuss anything done by you or by any other agent of the State of New Mexico since 1/1/03 to ascertain what has happened to people with developmental disabilities who were discharged from any state-operated facility after January 1, 1970;
>>
>> d. the identity of every agent of the State of New Mexico who has done anything since 1/1/03 to ascertain what has happened to people with developmental disabilities who were discharged from any state-operated facility after January 1, 1970; and
>>
>> e. everything done by any agent of the State of New Mexico since 1/1/03 to ascertain what has happened to people with developmental disabilities who were discharged from any state-operated facility after January 1, 1970.

>   2. How many people with developmental disabilities were discharged from any state-operated facility after January 1, 1970? Which of them have been assessed by an agent of the State since January 1, 2003, who did the assessment, how the assessments were conducted and the substantive circumstances of each of the people who were assessed. how many were incarcerated? How many in any other institution? What institutions? How many are dead? How many were in dangerous settings? How many need guardians, limited guardians, conservators? How many were being financially exploited?

[Doc. 77, Ex. G.]

Plaintiffs also intended to ask Ms. Dennis about people with developmental disabilities who were discharged from state-operated facilities after January 1, 1970 and who were assessed by an agent of the State since January 1, 2003. Plaintiffs wished to know how many persons received assistance, the identities and contact information of any individuals who participated since January 1, 2003 in locating people with developmental disabilities, documents that describe anything done since January 1, 2003 to locate people with developmental disabilities, including their placement after discharge, the nature of the setting to which each person was transferred, the gender and age of each person discharged, protocols followed in discharging and placing people with developmental disabilities, protocols followed after placement to ensure each persons's safety and care, and the role of state personnel with respect to investigating allegations of abuse, neglect or exploitation of such persons, etc.

In addition, Plaintiffs planned to ask Ms. Dennis the identity of her current supervisor, the name of her supervisor was in 2007, Ms. Dennis's job description, and evaluations of her work over the last three years. Plaintiffs also wished to know which government employees had received information from Ms. Dennis regarding discharged persons with developmental disabilities. [Doc. 77, Ex. G.]

## **Defendants' Motion for Protective Order**

Defendants ask that Ms. Dennis's entire deposition be precluded, or in the alternative, that the Court "set clear parameters regarding the areas of inquiry in which Plaintiffs may depose Ms. Dennis that do not run afoul of either the attorney work product doctrine or attorney-client privilege." [Doc. 77, p. 1.] Defendants' position is that, except for questions about Ms. Dennis's supervisors or her work performance, all of the areas of inquiry listed by Plaintiffs, would violate protections afforded by the work product doctrine or attorney-client privilege. According to Defendants, all of the questions presented by Plaintiffs concern Ms. Dennis's participation in the investigation and defense of the claims in this lawsuit or request information Ms. Dennis and defense counsel exchanged during that investigation.

Plaintiffs respond that Defendants failed to make any showing that either protection precludes the deposition of Ms. Dennis. They ask that the Court to deny the motion for protective order and reject the alternative request that limitations be imposed upon the scope of Ms. Dennis's deposition. More specifically, Plaintiffs argue that Defendants confuse confidential communications that may be subject to protection with the facts underlying or concerning such communications, which would not be protected. Plaintiffs further note that the list they originally provided to defense counsel was not a complete list of questions Plaintiffs intend to ask Ms. Dennis. Instead, the list was narrowed to respond to Defendants' concern regarding work product or attorney-client privileged material. Defendants explain that they will make other inquiries of Ms. Dennis during her deposition.

The parties conferred in good faith before bringing this matter to the Court's attention. In addition, it appears that the parties agree that the areas of inquiry are relevant to the claims and

defenses.[2] Moreover, the parties agree on the pertinent law regarding attorney-client privilege and the work product doctrine. [Doc. 127, p. 6, Doc. 111, p.4.] They disagree as to the application of these doctrines.

## Legal Standard

Rule 26 of the Federal Rules of Civil Procedure states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

> This principle of broad discovery is intended to allow the parties to learn as much as they can about each other's claims and defenses before trial. *See* Herbert v. Lando, 441 U.S. 153, 177 (1979) ("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials.") The federal discovery rules are a reflection of the courts' and Congress' recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).

Desmare v. New Mexico, 2007 WL 5231689 at *2 (D.N.M. Aug. 10, 2007) (addressing whether attorney-client privilege or work product doctrine protected production of in-house investigative report).

When a party contends that information or testimony is protected because of a privilege, the party asserting the privilege bears the burden of proof with respect to showing its entitlement to the

---

[2]While Defendants do not explicitly state that the areas of inquiry are relevant, they do not state otherwise. Instead, they recite the law regarding relevancy and generally limit their arguments to attorney-client privilege and work product doctrine. [Doc. 77, p. 5.]

7

privilege. *See* Foster v. Hill (In re Foster), 188 F.3d 1259 (1264 (10th Cir. 1999) ("A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed.") Similarly, the party asserting the work product doctrine as a bar to discovery has the burden of establishing its applicability. Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984).

The attorney-client privilege is not intended to be a catch-all exception to the need for broad discovery. *See* Sanchez v. Matta, 229 F.R.D. 649, 655-56 (D.N.M. 2004) (internal citations omitted). "[I]f all activities of a lawyer are classified as warranting the bar of discovery proceedings because of the attorney-client privilege, then it would be appropriate for clients to retain lawyers as investigators, custodians of records and the like, thereby turning the shield of the privilege into the sword of injustice." Id.   Indeed, privileges typically are narrowly construed.

> . . . any privilege limiting discovery is narrowly and strictly construed. See Mims v. Dallas County, 230 F.R.D. 479, 484 (N.D. Tex.2005) (stating, "[l]ike all privileges, the work product doctrine must be strictly construed"); Allen v. Chicago Transit Auth., 198 F.R.D. 495, 500 (N.D. Ill. 2001)(stating that "[o]nly by strictly construing the elements of work product, can the doctrine's original intent be best served"); McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 260 (N.D. Ill. 2000)(stating that the work-product doctrine "significantly restricts the scope of discovery and must be narrowly construed in order to aid in the search for the truth"); Stout v. Ill. Farmers Ins. Co., 150 F.R.D. 594, 602 (S.D. Ind. 1993) (collecting cases and stating that "privileges and immunities which hinder the Rules' objective of liberal discovery should be strictly construed consistent with their language and purposes").

Trujillo v. Board of Educ. of the Albuquerque Public Schools, 2007 WL 1306593 at *4 (D.N.M. Mar. 12, 2007). *See also* E.E.O.C. v. Outback Steakhouse of Florida, Inc., 251 F.R.D. 603, 610 (D. Colo. 2008) (noting that attorney-client privilege is more narrow and distinct from the work doctrine). Privileges are to be strictly construed, as they contravene "the normally predominant

principle of utilizing all rational means for ascertaining truth." In re Qwest Communications, Inc., 450 F.3d 1179, 1185 (10th Cir. 2006).

The purpose of the attorney-client privilege is to "encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976).  The attorney-client privilege protects from discovery communications made in confidence between a client and the attorney, but it does not protect the underlying facts contained within those communications.  Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981); In re Qwest Communications, 450 F.3d at 1185.  To warrant the privilege's protection, "a communication between a lawyer and client must relate to legal advice or strategy sought by the client."  United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998), *cert. denied*, 525 U.S. 1088 (1999).  *See also* 24 Wright & Graham, Federal Practice and Procedure: Evidence § 5478 at 229 n. 179 ("[C]onversations the attorney has with his investigator are not privileged unless they would reveal a communication of the client because the investigation of facts is not 'professional legal services.'")

The work product privilege exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent.  The purpose of the work product doctrine is . . . to encourage effective trial preparation." United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980).  The Tenth Circuit Court of Appeals notes that the work product doctrine "protects only that which was prepared in preparation for litigation." Vargas v. United States (In re Grand Jury Proceedings), 727 F.2d 941, 945 (10th Cir.), *cert. denied*, 469 U.S. 819 (1984).  The doctrine does not protect facts contained within the work product but intends to protect legal impressions and strategies.  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

Plaintiffs agree that the attorney-client privilege potentially embraces the communication of confidential information exchanged between defense attorneys and Ms. Dennis, in her role as investigator. In other words, confidential communications between Ms. Dennis and counsel regarding the investigation of the allegations could be deemed privileged. In addition, Plaintiffs agree that "it is reasonable to conclude that the [Work Product] Doctrine embraces a private investigator of counsel." Thus, the Doctrine could protect materials, tangible and intangible, prepared in anticipation of litigation by or for Defendants. [Doc. 111, p. 6.]

### Analysis

The Court will not preclude Ms. Dennis's deposition in its entirety for a number of reasons. First, many of the areas of inquiry listed by Plaintiffs in their May 27, 2008 email pertain to facts rather than to confidential communications between Dennis and defense counsel. In her affidavit, Dennis states that she was contacted in November 2007 to assist defense counsel in the investigation and defense of claims brought by Plaintiffs in this lawsuit. [Doc. 77, Ex. J, ¶ 2.] A number of the topics listed by Plaintiffs ask for information from January 1, 2003, or even earlier. This was before Dennis took on responsibilities as an investigator in November 2007. Even if Ms. Dennis obtained some of the responsive information after November 2007, it may amount to underlying factual information that is not protected from disclosure.

For example, one area of inquiry concerns what actions, if any, Ms. Dennis took since January 1, 2003, to ascertain what happened to people with developmental disabilities who were discharged from any state-operated facility. [Doc. 77, Ex. G, No. 1.] It appears that, at a minimum, if Ms. Dennis was involved in placement or discharge of persons with developmental disabilities, prior to November 2007, these questions would not elicit privileged or protected information. Rather, the inquiries request factual information that be known to Ms. Dennis. There are many areas

of inquiry asking for similar factual information, dating from January 1, 2003; e.g., how many people with developmental disabilities were discharged from any state-operated facility after January 1, 1970, identification of documents that describe anything done since January 1, 2003 to locate or assist people with developmental disabilities who were discharged, identities of individuals who have participated since that date in locating, assessing or assisting people with developmental disability who were discharged, etc. [Doc. 77, Ex. G.] Other inquiries include questions about protocols used to follow each person for placement and to ensure their care. These questions appear to ask for underlying factual information that is discoverable.

While Ms. Dennis states she is a social and community coordinator for the Department of Health, it is unknown how long she has worked for the Department of Health or in what capacity. The fact that defense counsel selected Ms. Dennis to investigate this matter may or may not indicate that Ms. Dennis was familiar with some of the underlying facts. In any event, without more information about Ms. Dennis's earlier work and knowledge and without seeing the actual questions posed to Ms. Dennis, it is premature to preclude her deposition in its entirety. *See* <u>McBride v. Medicalodges, Inc.</u>, 250 F.R.D. 581, 587 (D. Kan. 2008) (finding it premature to grant protective order and preclude Rule 30(b)(6) deposition on grounds of attorney-client privilege or work product doctrine).

Moreover, the topics on their face do not necessarily invade the attorney-client privilege or work product doctrine. The Court recognizes that some questions may be posed that will elicit such information, particularly questions that concern Ms. Dennis's work as investigator after November 2007, and confidential communications she may have had with defense attorneys at that time. It is clear, however, that neither the attorney-client privilege nor the work product doctrine protect from disclosure underlying factual information.

In addition, Plaintiffs explained from the outset that they provided defense counsel with only a partial list of questions that might be posed to Ms. Dennis. It is possible that other questions will not implicate privileged or protected matters.

Finally, at this stage of the proceeding, the Court cannot anticipate and determine in advance of the deposition which questions posed to Ms. Dennis will be objectionable on grounds of privilege or work product. For example, the Court cannot decide in advance which questions may actually ask for the mental processes of the attorney, the attorneys' or legal investigators' mental impressions, conclusions, opinions, legal theories, or intangible work product developed in anticipation of litigation.

At the deposition of Ms. Dennis defense counsel will be able to make these determinations and make the appropriate objections. Should defense counsel object on grounds of attorney-client privilege or the work product doctrine and the parties are unable to resolve the dispute, counsel should promptly file a motion for protective order. At that point, the Court will have the necessary information before it to make the determinations.[3]

The Court recognizes that Defendants argue "the only knowledge that Ms. Dennis has regarding the facts surrounding Plaintiffs' claims" was obtained when working with defense counsel. [Doc. 127, p. 1.] Defendants further state that prior to November 2007, Ms. Dennis was not involved in the investigation and defense of claims at issue in this lawsuit. [Doc. 127, p. 2, ¶ 3.] This may turn out to be true. However, at this stage of the proceeding, Plaintiffs are entitled to explore what positions Ms. Dennis held before beginning her investigative work in November 2007 and whether, at that time, she had knowledge of the discharge and placement of persons with

---

[3]As counsel know, the Court also routinely makes itself available for telephonic conferences during depositions to resolve disputes over questions or area of inquiry that come up during depositions.

developmental disabilities. In one portion of the briefing, Defendants state that prior to November 2007, Ms. Dennis "had no knowledge of these claims." [Doc. 127, p. 7.] This does not mean Ms. Dennis had no knowledge of the underlying facts that might pertain to the claims.

For the above-stated reasons, the Court declines to enter a protective order precluding Ms. Dennis's deposition in its entirety. However, it grants Defendants' motion for protective order, in part, only to the extent that Plaintiffs are advised that they cannot ask Ms. Dennis questions that would necessarily reveal confidential communications with counsel or the work product of counsel undertaken for purposes of defending the allegations in this lawsuit. To be privileged, Defendants bear the burden of showing the existence of a connection between the subject of the confidential communication and the rendering of legal advice. *See* Wagoner v. Pfizer, Inc., 2008 WL 821952 at *3 (D. Kan. Mar. 26, 2008) (noting that not every communication between an attorney and client is privileged). The Court recognizes that some questions may be permissible that seek information regarding the investigation of facts, because "the investigation of facts is not 'professional legal services.'" *See* 24 Federal Practice and Procedure § 5478, at 229 n. 179.

**IT IS THEREFORE ORDERED** that Defendants' motion of protective order with respect to the deposition of Ms. Dennis is granted in part and denied in part as explained herein.

_____
Alan C. Torgerson
UNITED STATES MAGISTRATE JUDGE