## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JM, through her next friend John Foley,**
**and J.E., through her next friend Maria Fellin,**
**on their own behalf and on behalf of a class of**
**all other similarly-situated persons,**

       **Plaintiffs,**                     **CIV NO. 07-604 RB/ACT**

**vs.**

**NEW MEXICO DEPARTMENT OF HEALTH, et al.**

       **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on five motions filed in this case.  The first is Plaintiffs' Motion for Leave to File Sur-Reply filed May 20, 2009 [Doc. No. 264] for which no response was filed.  The second is Intervenor's Office of the Governor of the State of New Mexico's ("Governor's Office") Motion for Protective Order filed April 10, 2009 [Doc. No. 238], Plaintiffs' Response filed April 27, 2009 [Doc. No. 250], Governor's Office Reply filed May 14, 2009 [Doc. No. 259], Plaintiffs' Sur-Reply filed May 20, 2009 [Doc. No. 264-2], Intervenor's Supplemental Brief filed June 26, 2009 [Doc. No. 281], Plaintiffs' Supplemental Brief filed June 26, 2009 [Doc. No. 280], Defendants' Supplemental Brief filed August 7, 2009, with Errata filed August 12, 2009 [Doc. Nos. 296, 297], and Plaintiffs' Supplemental Brief filed August 7, 2009 [Doc. No. 295].  The third is the Governor's Office Second Motion for Protective Order filed April 27, 2009 [Doc. No. 249], Plaintiff's Response filed May 14, 2009 [Doc. No. 260], Governor's Office Reply filed June 4, 2009 [Doc. No. 268], Intervenor's Supplemental Brief filed June 26, 2009 [Doc. No. 281], Plaintiffs' Supplemental Brief filed June 26, 2009 [Doc. No. 280], Defendants' Supplemental Brief filed August 7, 2009, with Errata filed August 12, 2009 [Doc. Nos. 296, 297], and Plaintiffs'

Supplemental Brief filed August 7, 2009 [Doc. No. 295]. The fourth is Defendants' Motion for Protective Order filed April 26, 2009 [Doc. No. 247], Plaintiffs' Response filed May 13, 2009 [Doc. No. 257], Defendants' Reply filed June 8, 2009 [Doc. No. 269], Defendants' Supplemental Brief filed August 7, 2009, with Errata filed August 12, 2009 [Doc. Nos. 296, 297], and Plaintiffs' Supplemental Brief filed August 7, 2009 [Doc. No. 295]. The fifth is Plaintiffs' Motion to Compel filed May 11, 2009 [Doc. No. 256], Defendants' Response filed June 8, 2009 [Doc. No. 270], Plaintiffs' Reply filed July 7, 2009 [Doc. No. 288], Defendants' Supplemental Brief filed August 7, 2009, with Errata filed August 12, 2009 [Doc. Nos. 296, 297], and Plaintiffs' Supplemental Brief filed August 7, 2009 [Doc. No. 295]. Having reviewed Plaintiffs' Motion for Leave to File Sur-Reply, the Court finds that it is well taken and it will be granted. Having reviewed the Governor's Office Motion for Protective Order, the Response, the Reply, the Sur-Reply, the supplemental briefs, and the applicable law, the Court finds that the Governor's Office Motion for Protective Order will be granted in part and denied in part. Having reviewed the Governor's Office Second Motion for Protective Order, the Response, the Reply, the supplemental briefs, and the applicable law, the Court finds that the Governor's Office Second Motion for Protective Order will be granted in part and denied in part. Having reviewed the Defendants' Motion for Protective Order, the Response, the Reply, the supplemental briefs, and the applicable law, the Court finds that the Defendants' Motion for Protective Order will be granted in part and denied in part. Having reviewed the Plaintiffs' Motion to Compel, the Response, the Reply, the supplemental briefs, and the applicable law, the Court finds that Plaintiffs' Motion to Compel will be granted in part and denied in part.

## I. BACKGROUND

The general factual background of this case is set forth in this Court's Memorandum Opinion and Order entered March 13, 2009 [Doc. No. 230]. The Governor's Office is presently seeking a

protective order requesting that the depositions of Judge Robert Schwartz, Nancy Long, and Francisco Nogales be precluded in their entirety because such depositions would violate protections afforded by the executive privilege and the deliberative process privilege, and the depositions of Nancy Long and Judge Schwartz would also violate the attorney-client privilege. In its Motion, the Governor's Office further seeks protection from having to produce any documents or information requested in Plaintiffs' New Mexico Inspection of Public Records Act request, claiming the same privileges as for the depositions and further claiming that the patient information is confidential. Plaintiffs respond that the privileges asserted by the Governor's Office either do not apply or were waived and that all confidentiality concerns are adequately protected by the Confidentiality Order [Doc. No. 44] previously entered by this Court.

In the Governor's Office Second Motion for Protective Order, the Governor's Office moves for a protective order regarding materials referenced in the *duces tecum* portion of the deposition notices of Gerald McBride, Robert Casey, and Leroy Lucero, arguing that such information is protected from disclosure by the execute privilege, the deliberative process privilege, the attorney-client privilege, the work product doctrine, and confidentiality. Plaintiffs respond as they did to the Governor's Office's first motion regarding the asserted privileges and the confidentiality issues. Regarding work-product, Plaintiffs contend that the work-product doctrine does not apply because the requested documents were not prepared in anticipation of litigation, but even if the doctrine applies, Plaintiffs have demonstrated a substantial need for the requested documents and an inability to obtain them by other means.

The Defendants' Motion for Protective Order also moves for a protective order regarding materials referenced in the *duces tecum* portion of the deposition notices of Gerald McBride, Robert Casey, and Leroy Lucero, advancing the same arguments as those presented in the Governor's

Office Motion and further arguing that information in the possession of Gerald McBride is protected by the attorney-client privilege, the work-product doctrine, and executive privilege. Defendants additionally argue that certain information in the possession of Robert Casey and Leroy Lucero is protected under the attorney-client privilege and the work-product doctrine. Plaintiffs contend that all factual information is discoverable from Mr. McBride and that the asserted privileges regarding Mr. Casey and Mr. Lucero are inapplicable.

In Plaintiffs' Motion to Compel, Plaintiffs ask this Court to compel production of various documents, many of which appear to be addressed in the Governor's Office's and the Defendants' Motions for Protective Order. Defendants again assert all of the privileges they claim under their Motion for Protective Order.

## II. LEGAL STANDARD FOR ISSUANCE OF PROTECTIVE ORDER

Generally, discovery is allowed of any matter that is relevant to the claim or defense of a party, provided the requested information is not protected by a privilege. Fed.R.Civ.P. 26(b)(1). Information need not be admissible at trial in order to be considered "relevant" under Rule 26. *Id.* The requested discovery, however, must appear "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu,* 919 F.2d 130 (10th Cir. 1990). The moving party must set forth specific facts showing good cause for the issuance of the protective order, not simply conclusory statements. *Gulf Oil Co. V. Bernard,* 452 U.S. 89, 102 n. 16 (1981). *See also Skellerup Ind. Ltd.v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) (The moving party must demonstrate a particular and specific need for a protective order as opposed to the presentation of a conclusory argument.) (citations omitted). When a party contends that information or testimony is protected because of a privilege, the party asserting the privilege bears the burden of proof with respect to

4

showing its entitlement to the privilege. *See Foster v. Hill*, 188 F.3d 1259, 1264 (10th Cir. 1999) ("A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed.").

## III. APPLICABLE LAW FOR GOVERNOR'S OFFICE'S FIRST AND SECOND MOTIONS FOR PROTECTIVE ORDER, DEFENDANTS' MOTION FOR PROTECTIVE ORDER, AND PLAINTIFFS' MOTION TO COMPEL

Privileges in General

The parties raise the issue of whether federal or state law should be applied to the various privileges asserted by Defendants. This case involves both federal and state-law claims. Generally when this situation arises, federal courts may apply federal privilege law to the federal claims and state privilege law to the state-law claims. *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1551 (10th Cir. 1995), *cert. denied,* 517 U.S. 1190 (1996). However, where the privilege asserted goes to evidence that is relevant to both the federal and state law claims, federal privilege law should apply. *Vondrak v. City of Las Cruces, et al,* 2009 WL 1255451 (D.N.M.). This Court finds that privileges asserted in this case go to evidence that is relevant to both the federal and state law claims, and, accordingly, the Court will apply federal law. However, it is still appropriate to consider the existence of state precedent in recognizing a particular privilege. *See Jaffee v. Redmond,* 518 U.S. 1, 12-13 (1996).

Executive Privilege

In *State of New Mexico ex rel. Attorney General v. First Judicial District Court of New Mexico,* 96 N.M. 254, 257, 629 P.2d 330, 333 (1981), the New Mexico Supreme Court held that executive privilege is recognized in New Mexico. The court found that the purpose of the executive privilege is to "safeguard the decision-making process of the government by fostering candid expression of recommendations and advice and to protect this process from disclosure." *Id.* at 258,

5

629 P.2d at 334.  The privilege is not, however, absolute; therefore, even if the executive privilege applies, a court "must balance the public's interest in preserving confidentiality to promote intra-governmental candor with the individual's need for disclosure of the particular information sought." *Id.* If the party seeking discovery shows good cause, privileged information should be released. *Id.*

New Mexico law regarding executive privilege generally parallels that of federal law. In *Cheney v. U.S. District Court,* 542 U.S. 367, 382-389 (2004), the United States Supreme Court recognized that a civil litigant's need for discovery may be constrained where discovery requests impinge on the constitutional prerogative of officials in the executive branch to give advice and recommendations to the executive. This executive privilege shields confidential, executive branch communications from disclosure. *United States v. Nixon,* 418 U.S. 683, 705 (1974). It is based upon the principle that "those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision making process." *Id.* The question, then, is whether disclosure of information or collected material would expose the decision making process in such a way as to discourage discussion and thereby undermine the agency's ability to perform its functions.

The executive privilege is a "qualified privilege and can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material, with the court required to balance the litigant's need for the disclosure against the government's need for secrecy." *Hinsdale v. City of Liberal,* 1997 WL 557314 (D. Kan.).

Primarily factual material and communications with or among agencies are not protected by executive privilege. *EPA v. Mink,* 410 U.S. 73, 87-88 (1973).  *See also Bristol-Myers Co v. Federal Trade Commission.,* 424 F.2d 935, 939 (D.C. Cir.), *cert. denied,* 400 U.S. 824 (1970); *Boeing Airplane Co. v. Coggeshall,* 280 F.2d 654, 660-61 (D.C.Cir. 1960).

Deliberative Process Privilege

The deliberative process privilege is a subset of the more general executive privilege. *In re U.S.,* 2009 WL 577794 (Fed. Cir.). It is designed to prevent injury to the quality of agency decisions by insuring that frank discussions within the agency are not inhibited by public disclosure.  *See Kinoy v. Mitchell,* 67 F.R.D. 1, 11 (S.D.N.Y. 1975) ("The deliberate and decision-making processes of Government officials are held confidential to preserve the free expression, integrity and independence of those responsible for making the determinations that enable government to operate.")  The privilege "'rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'" *Casad v. U.S. Department of Health and Human Services,* 301 F.3d 1247, 1251 (10th Cir. 2002) (quoting *Department of Interior v. Klamath Water Users Protective Association,* 532 U.S. 1, 8-9 (2001)).

To fall within the deliberative-process privilege, information must be pre-decisional in nature and must form part of the agency's deliberative process.  *See NLRB v. Sears Roebuck and Co.,* 421 U.S. 132, 151-152 (1975). Information is pre-decisional if it is prepared "to assist an agency decisionmaker in arriving at his decision" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Formaldehyde Institute v. Department of Health and Human Services,* 889 F.2d 1118, 1122 (D.C.Cir. 1989) (internal quotations and citations omitted). *See also Pueblo of Zuni v. United States,* No. 01-1046 WJ/WPL, Memorandum Opinion and Order at 13, filed February 13, 2006 (Doc. No. 205) (D.N.M. 2006) (where the court found that a pre-decisional document may include recommendations, proposals, suggestions, and

7

other subjective evaluations which reflect the personal opinions of the writer and which discuss the wisdom or merits of a particular agency policy or recommend new agency policy.)

A pre-decisional document is part of the deliberative process if it relates to government decision making and its disclosure to the public "would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Institute v. Department of Health and Human Services,* 889 F.2d at 1122 (internal quotations omitted). The government has the burden of demonstrating "precise and certain reasons for preserving confidentiality of the materials at issue." *Center for Biological Diversity v. Norton,* 336 F.Supp.2d 1155, 1159 (D.N.M. 2004) (citation omitted).

As with the executive privilege, the deliberative process privilege is a "qualified privilege and can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material, with the court required to balance the litigant's need for the disclosure against the government's need for secrecy." *Hinsdale v. City of Liberal,* 1997 WL 557314 (D. Kan.).

The deliberative process privilege protects internal communications of a governmental agency when they are deliberative in nature, but not when they are purely factual. *See Daily Gazette Company, Inc. v. West Virginia Development Office,* 482 S.E.2d 180, 190 (W.Va. 1996) ("It is generally accepted that the deliberative process privilege does not extend to materials which are factual in nature, even if such materials may have been used by government decision makers in their deliberations."); *See also Petroleum Information Corporation v. U.S. Department of Interior,* 976 F.2d 1429, 1434 (D.C. Cir. 1992).

Attorney-Client Privilege

The attorney-client privilege "protects confidential communications by a client to an

8

attorney

made in order to obtain legal assistance from the attorney in his or her capacity as a legal advisor." *United States v. Phelan*, 3 Fed. Appx. 716, 718 (10th Cir. 2001)(quoting *In re Grand Jury Subpoena Duces Tecum,* 697 F.2d 277, 278 (10th Cir.1983))(internal quotation omitted).It is not intended to be a catch-all exception to the need for broad discovery. *See Sanchez v. Matta*, 229 F.R.D. 649, 655-56 (D.N.M. 2004) (internal citations omitted). "[I]f all activities of a lawyer are classified as warranting the bar of discovery proceedings because of the attorney-client privilege, then it would be appropriate for clients to retain lawyers as investigators, custodians of records and the like, thereby turning the shield of the privilege into the sword of injustice." *Id*. Indeed, privileges typically are narrowly construed. *See Trujillo v. Board of Educ. of the Albuquerque Public Schools*, 2007 WL 1306593 at *4 (D.N.M. Mar. 12, 2007). Privileges are to be strictly construed because they contravene "the normally predominant principle of utilizing all rational means for ascertaining truth*." In re Qwest Communications, Inc*., 450 F.3d 1179, 1185 (10th Cir.), *cert. denied,* 549 U.S. 1031 (2006).

The purpose of the attorney-client privilege is to "encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The attorney-client privilege protects from discovery communications made in confidence between a client and the attorney, but it does not protect the underlying facts contained within those communications. *Upjohn Co. v.United States*, 449 U.S. 383, 395-96 (1981); *In re Qwest Communications*, 450 F.3d at 1185. To warrant the privilege's protection, "a communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998), *cert. denied*, 525 U.S. 1088 (1999). *See also* 24 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5478 at 229 n. 179 ("[C]onversations the attorney has with his investigator are not

privileged unless they would reveal a communication of the client because the investigation of facts is not 'professional legal services.'")

Work Product Privilege

The attorney work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Qwest Communications,* 450 F.3d at 1186 (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006)(citing Fed. R. Civ. P. 26(b)(3)). *See Hickman v. Taylor,* 329 U.S. 495, 510 (1947) ("[A]n attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties . . . falls outside the arena of discovery."). The Tenth Circuit Court of Appeals notes that the work-product doctrine "protects only that which was prepared in preparation for litigation." *Vargas v. United States (In re Grand Jury Proceedings),* 727 F.2d 941, 945 (10th Cir.), *cert denied,* 469 U.S. 819 (1984).

Similar to the attorney-client privilege, "[t]he party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (citation omitted). Moreover, the Tenth Circuit has held that "production of work-product material during discovery waives a work-product objection." *In re Qwest Communications*., 450 F.3d at 1186.

If the party asserting the work-product protection establishes entitlement to the protection, Rule 26(b)(3) allows production of attorney work-product materials only upon a showing that the party seeking discovery has substantial need for the materials to prepare its case and that the party

is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3). A party has a substantial need for work product materials if those materials contain information that is "essential" to that party's case, "crucial" to the determination of liability, or "carries great probative value on contested issues." *National Congress for Puerto Rican Rights v. The City of New York,* 194 F.R.D. 105, 110 (S.D.N.Y. 2000); *see also McCoo v. Denny's Inc.,* 192 F.R.D. 675, 684 (D. Kan. 2000) (the party requesting the production of work product must show that the information requested is important to the preparation of its case). In order to show "undue hardship," a party need not prove that it is absolutely impossible to obtain the information elsewhere, but rather that it is likely to be significantly more difficult, time-consuming or expensive to obtain information from another source." *SEC v. Thrasher*, 1995 WL 46681 (S.D.N.Y. February 7, 2005). A court may order the production of work-product material when one party does not have access to the same information as the other. *See Strauss v. Credit Lyonnais, S.A.,* 242 F.R.D. 199, 237 (E.D.N.Y. 2007); *Lawrence E. Jaffe Pension Plan v. Household International, Inc.,* 244 F.R.D. 412 (N.D. Ill. 2006); *Wainwright v. Kraftco Corporation,* 54 F.R.D. 532 (N.D. Ga. 1972). Courts have held that requiring a party to duplicate an extensive investigation creates an undue hardship. *See, e.g., EEOC v. CRST Van Expedited, Inc.,* 2009 WL 136025 (N.D. Iowa January 20, 2009) (defendant was entitled to copies of materials gathered through solicitation letters issued by the EEOC where it would need to depose more than 150 class members to obtain the same information); *In re Intel Corporation Microprocessor Antitrust Litigation,* 2008 U.S. Dist. LEXIS 98898 at *52 (D. Del. May 9, 2008) (requiring production of materials gathered during defendant's investigation into its failure to maintain electronic records, when plaintiff would need to conduct more than 1000 interviews to obtain the same information); *see also Jarvis, Inc. v. American Tel. & Tel. Co.,* 84 F.R.D. 286, 293 (D. Colo. 1979). Furthermore, where one party has

11

created a database containing information that is relevant to the issues in a case, courts have not required the other party to cull through source material to obtain the same information, *see Fisher v. United States,* 502 F.Supp.2d 1033, 1050 (D. Ariz. 2006), and courts have not required one party to go to great lengths to obtain information the other party already has. *See SEC v. Thrasher,* 1995 WL 46681 (S.D.N.Y. February 7, 2005).  If a court finds substantial need and undue hardship for work-product materials and thereby orders discovery of these materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26 (b)(3)(B).

Relevancy

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to
any party's claim or defense--including the existence, description, nature,
custody, condition, and location of any documents or other tangible things
and the identity and location of persons who know of any discoverable
matter. For good cause, the court may order discovery of any matter relevant to
the subject matter involved in the action. Relevant information need not be
admissible at the trial if the discovery appears reasonably calculated to lead to the
discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Courts should liberally construe the scope of discovery under rule 26 as "the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 621 (N.D. Cal. 2006) (citing *Oakes v. Halvorsen Mar. Ltd.,* 179 F.R.D. 281, 283 (C.D. Cal. 1998)).  This principle of broad discovery is intended to allow the parties to learn as much as they can about each other's claims and defenses before trial. *See Herbert v. Lando,* 441 U.S. 153, 177 (1979).

**IV. ANALYSIS**

12

1. **The Office of the Governor of the State of New Mexico's Motion for Protective Order** [Doc. No. 238]

Depositions of Judge Robert Schwartz, Francisco Nogales and Nancy Long

This Court finds that the executive privilege applies to the Governor's Office in this case.[1] Governor Richardson tasked Robert Schwartz and Francisco Nogales with investigating and providing recommendations to the Governor's office regarding the former residents of various state institutions for the developmentally disabled.  Nancy Long replaced Mr. Schwartz. New Mexico public policy is served when, under appropriate circumstances, the Governor can task a special investigation without concern that a future litigant will be able to discover recommendations and advice given during the investigation. Protecting this process can help avoid curtailing the executive's use of these types of procedures. This Court further finds that Plaintiffs have not presented the Court with sufficient specific factual information to establish waiver regarding recommendations and advice concerning the investigation.[2] "Since executive privilege exists to aid the governmental decision-making process, a waiver should not be lightly inferred."  *SCM Corporation v. United States*, 473 F.Supp. 791, 796 (Cust. Ct. 1979).  As discussed *supra*, the executive privilege can be overcome if Plaintiffs show sufficient need for the material that outweighs the public interests. The Court finds that Plaintiffs have not established sufficient need for information regarding opinions, conclusions, recommendations, advice, and similar "non-

---

[1]This Court's ruling regarding executive privilege is in keeping with Judge Conway's December 15, 2005 Recommendation Regarding Scope of Depositions in the *La Familia* case. [Doc. No. 77-4, Exh. H].

[2]This Court's ruling regarding waiver is also in keeping with Judge Conway's December 15, 2005 Recommendation Regarding Scope of Depositions in the *La Familia* case. [Doc. No. 77-4, Exh. H]. This Court agrees with Judge Conway that the privilege has not been waived by public disclosure of the investigation or by the fact that Mr. Schwartz allowed Plaintiffs' counsel to participate in the investigation.  *See id.*

13

factual" communications between Mr. Schwartz, Mr. Nogales, Ms. Long and members of the executive branch that would outweigh the public interests to be served by the executive privilege.[3]

Regarding the deliberative process privilege, the Governor's Office has not demonstrated with "precise and certain reasons" that the information requested is predecisional and relates to a deliberative process. The Governor's Office has presented no facts to show that Mr. Schwartz, Mr. Nogales and Ms. Long were engaged in deliberations or discussions with the Governor to determine what policy the Governor should adopt. Accordingly this Court finds that the deliberative process privilege does not apply; however, even if the privilege did apply, as discussed *supra*, it would not extend to information that is factual in nature.

Finally, this Court finds that the attorney-client privilege applies to Mr. Schwartz and Nancy Long. However, as discussed *supra*, the underlying facts contained within attorney-client communications are not shielded, and conversations the attorney has with his or her investigator are not privileged unless they would reveal a communication of the client because the investigation of facts is not professional legal services. *Id.* at 9.

Although the Court finds that the executive and attorney-client privileges apply, neither of these privileges protects underlying facts within any protected communications. Therefore, the Governor's Office request that this Court preclude the depositions of Judge Schwartz, Mr. Nogales, and Ms. Long in their entirety is denied; however, the depositions will be limited in scope to protect the applicable privileges. Accordingly, the depositions may proceed as follows:

The depositions of Mr. Schwartz, Mr. Nogales, and Ms. Long will be limited to factual matters regarding their investigation. Counsel may not inquire into the

---

[3]In fact, throughout their briefs, Plaintiffs make no specific argument that they have a need for such "non-factual" information.

opinions, recommendations, conclusions, advice, or other "non-factual" matters Mr.

Schwartz, Mr. Nogales, or Ms. Long provided to the Governor or to other members

of the executive branch with whom these individuals discussed the investigation.

For purposes of this ruling, members of the executive branch are defined as individuals on

the Governor's staff as well as legal counsel and policy making level individuals at other executive

branch agencies, specifically including Children, Youth, and Families Department, New Mexico

Department of Health, and New Mexico Department of Human Services.  Cabinet secretaries and

division directors are the "policy making" executive branch employees.  Individuals who, at the time

of the investigation, were former, not then current, executive branch employees are not members

of the executive branch whose communications with Mr. Schwartz, Mr. Nogales, or Ms Long are

protected by privilege. Counsel for the Office of the Governor may object and instruct the witnesses

not to answer questions which are believed to be prohibited under this Order.  If the parties are

unable to resolve the dispute, counsel should promptly file a motion for protective order.[4]

<u>Documents</u>

In its Motion for Protective Order, the Governor's Office further seeks protection from

having to produce any documents or information requested in Plaintiffs' New Mexico Inspection

of Public Records Act, claiming the same privileges as for the depositions and further claiming that

the requested patient information is confidential.  For all of the reasons discussed *supra*, this Court

finds that the executive privilege applies to the documents requested, and Plaintiffs have not

established sufficient need for information regarding opinions, conclusions, advice,

---

[4]As counsel know, the Court also routinely makes itself available for telephonic conferences during depositions to resolve disputes over questions or areas of inquiry that come up during depositions.

recommendations, and similar "non-factual" information that would outweigh the public interests to be served by the executive privilege. However, factual information is not protected under the executive privilege. Again, for the reasons stated *supra,* the Court finds that the deliberative process privilege does not apply. To the extent attorney-client privilege might apply, it does not apply to factual information.[5]

        In addition to claiming various privileges, the Governor's Office contends that information requested by Plaintiffs implicates the confidentiality provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 CFR 164.500 *et. seq.*  The Governor's Office also claims that New Mexico public policy protects confidential patient information as reflected in the New Mexico Inspection of Public Records Act.  NMSA 1978, §14-2-1(a).  Plaintiffs respond, *inter alia*, that this Court's Case Management Order already includes a Confidentiality Order [Doc. No. 44] which fully addresses all relevant confidentiality interests.  In the July 21, 2009 hearing in this case, this Court gave counsel the opportunity to explain why the Confidentiality Order entered on March 20, 2008 does not adequately address all relevant confidentiality issues that have been raised.  Counsel failed to do so.  This Court finds that the March 20, 2008 Confidentiality Order adequately protects all relevant confidentiality interests addressed in the Governor's Office Motions.

        Accordingly, the Governor's Office must produce all factual information in unredacted form in the documents requested by Plaintiffs that are relevant to this Motion. If a document contains both factual and non-factual information, the non-factual information may be redacted.  If the Governor's Office believes that any privilege or confidentiality concern applies to a particular document that

---

        [5]Without counsel identifying with particularity all of the documents at issue, this Court cannot determine which documents or which parts of documents may or may not be subject to attorney-client privilege.

is not addressed in this Memorandum Opinion and Order, a privilege log must be prepared.

## 2.  Governor's Office's Second Motion for Protective Order [Doc. No. 249]

<u>Executive Privilege, Deliberative Process Privilege, Attorney-Client Privilege, and Confidentiality</u>

In the Governor's Office Second Motion for Protective Order, the Governor's Office moves for a protective order regarding materials referenced in the *duces tecum* portion of the deposition notices of Gerald McBride, Robert Casey and Leroy Lucero ("Notices"),[6] arguing that such information is protected from disclosure by the executive privilege, the deliberative process privilege, the attorney-client privilege, confidentiality, and the work-product doctrine.

For all the reasons stated *supra* regarding the Governor's Office's Motion for Protective Order, the Court finds that the executive privilege applies to the materials referenced in the Notices regarding Request No. 1.  The executive privilege also applies to the materials referenced in the Notices regarding Request Nos. 2 and 3 to the extent that any of these documents were generated or provided by or for the Office of the Governor in connection with the investigation.  This Court also finds that Plaintiffs have not established sufficient need for information regarding opinions,

---

[6]Specifically, Plaintiffs' Notice to all deponents requests the following documents:
1.  Every document in your possession or control that was provided since January 1, 2003 by Robert Schwartz, Francisco Nogales, Forrest Putnam, Nancy Long, or any person working for any of them, that discusses or describes in any way people released from the State's training schools for people with developmental disabilities.
2.  Any document in your possession or control that discusses or describes in any way efforts by State Protective Services officials since January 1, 2003 to locate or assist people released from the State's training schools for people with developmental disabilities.
3.  Any document in your possession or control that discusses or describes in any way the above captioned lawsuit.
    The following is added for deponents Casey and Lucero:
4.  Any forms used by you to identify, locate, assess or obtain assistance for any member of the proposed Plaintiff class.

conclusions, advice, and similar "non-factual" information that would outweigh the public interests to be served by the executive privilege. However, factual information is not protected under the executive privilege. Additionally, for the reasons stated *supra,* the Court finds that the deliberative process privilege does not apply.  To the extent that the attorney-client privilege applies, the privilege does not protect the underlying facts contained in the communication.[7]   Finally, as discussed *supra*, all relevant confidentiality concerns are adequately protected by the Confidentiality Order entered in this case on March 20, 2008.

In addition to the various privileges and confidentiality concerns asserted, the Governor's Office also contends that the documents Plaintiffs request must be protected from discovery because they fall under the work-product doctrine. As discussed *supra*, in order for the work-product doctrine to apply to the documents which Plaintiffs seek, this Court must find that these documents were prepared in anticipation of litigation.  In support of its contention that these documents were prepared in anticipation of litigation, the Governor's Office states: "Here, the Governor ordered Mr. Schwartz and later Ms. Long to conduct an investigation after certain details became apparent in the *La Familia* litigation.  Accordingly, the anticipation of further litigation was clearly a factor in tasking these attorneys with the investigation." [Doc. No. 249 at 10].  This is the sole argument that the Governor's Office presents to the Court.  The Court finds this argument wholly insufficient to meet the Governor's Office burden to establish that the work-product doctrine applies to the documents Plaintiffs seek. Furthermore, as Plaintiffs point out to the Court, the Governor's statements regarding the investigation support Plaintiffs' contention that the documents were not

---

[7]Again, without counsel identifying with particularity all of the documents at issue, this Court cannot determine which or what parts of documents may or may not be subject to attorney-client privilege.

prepared in anticipation of litigation.  When the Governor first announced the investigation, he stated that the state "should do the right thing here." [Doc. No. 260 at 12 (citation omitted)].  When the Governor appointed Judge Schwartz to head the investigation, he "made it very clear that this investigation is about lives, not litigation." *Id*. And when the Governor replaced Judge Schwartz with Nancy Long, he pledged to produce a "public report...[that would] be used to fix the system." *Id*.  The Court finds that the work-product doctrine does not apply to the documents generated by or for the Governor's Office requested in the Notices.

Finally the Governor's Office and the State Defendants argue that New Mexico law specifically prohibits the release of documents created and/or maintained by Adult Protective Services ("APS"), and release of such information is cause for imposition of criminal penalties.  *See* NMSA 1978, §27-2-29 *et. seq*.  By its terms, however, this statute has no application to "any other person or entity, by order of the court, having a legitimate interest in the case."  §27-7-29(B)(11).  This Court finds that Plaintiffs have a legitimate interest and, furthermore, the Confidentiality Order [Doc. No. 44] entered in this case protects any confidentiality concerns.

Accordingly, all factual information must be produced in unredacted form in the documents generated by or for the Governor's Office requested by Plaintiffs in the Notices.  If a document contains both factual and non-factual information, the non-factual information may be redacted.  If the Governor's Office believes that any privilege or confidentiality concern applies to a particular document that is not addressed in this Memorandum Opinion and Order, a privilege log must be prepared.

### 3.  Defendants' Motion for Protective Order [Doc. No. 247]

Defendants' Motion for Protective Order concerns the same document requests as the Governor's Office Second Motion for Protective Order, *i.e*., the Defendants are seeking protection

19

from having to produce documents in response to the *duces tecum* portion of the deposition notices to Gerald McBride, Robert Casey and Leroy Lucero. *See* fn. 7 *supra* for language of the Notices.

Defendants present two additional arguments to those made in the Governor's Office's Second Motion for Protective Order.  The first argument is that information in the possession of Attorney Gerald McBride is protected by attorney-client privilege, work-product doctrine, and executive privilege.

Regarding attorney-client privilege, Defendants argue the Mr. McBride is an Assistant General Counsel for New Mexico Aging and Long-Term Services Department ("ALTSD") that oversees Adult Protective Services ("APS"), and as such, he oversaw, reviewed or impacted APS investigations and provided necessary legal advice so that the Department could assist certain individuals.  Plaintiffs respond, and the Court agrees, that attorney-client privilege does not protect the underlying facts contained within attorney-client privileged communications.

Regarding the work-product doctrine, Defendants allege that the files and information were developed in Mr. McBride's capacity as an attorney for ALTSD.  As discussed *supra,* the work-product doctrine protects only that which was prepared in anticipation of litigation, and the party asserting the work-product doctrine as a bar to discovery has the burden of establishing its applicability. Defendants have failed to present any facts to establish that these documents were prepared in anticipation of litigation, and, accordingly, the work-product doctrine is not applicable.

Regarding executive privilege, this Court finds that Defendants have not presented sufficient facts to establish that they are entitled to invoke the executive privilege.  However, even if sufficient facts were presented, as discussed *supra*, factual information is not protected.

Defendants' second argument concerns Robert Casey and Leroy Lucero.  Defendants argue that Mr. Casey and Mr. Lucero were part of the "investigation team" retained to assist defense

20

counsel regarding the present lawsuit, and, therefore, the requested information that was provided to them, any notes taken by them, and any investigations they conducted as to these individuals are protected by attorney-client privilege and work product.  Plaintiffs contend that they were in fact working for DOH to update their developmental disabilities data base and to locate certain former residents of the State's facilities.

Based on information provided to the Court both in the briefs and the hearing of July 21, 2009, this Court finds that defense counsel retained Robert Casey and Leroy Lucero after the present lawsuit was filed in order to assist them with the lawsuit.  Accordingly, to the extent that Robert Casey and Leroy Lucero had communications with defense counsel that revealed any communication of the client, those communications are protected by the attorney-client privilege. However, as discussed *supra*, this privilege does not protect the underlying facts contained within those communications, and those facts must be provided to Plaintiffs.

This Court further finds that the work-product doctrine applies to documents generated by Mr. Casey and Mr. Lucero under the direction of Mr. Walz.  However, as discussed *supra*, Rule 26(b)(3) allows production of factual attorney work-product materials if Plaintiffs show that they have substantial need for the materials to prepare its case and that they are unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. Fed. R. Civ. P. 26(b)(3).

Plaintiffs assert that they have demonstrated a "substantial need" for these documents and an inability to obtain them by other means [Doc. No. 260, p. 11] and refer the Court to their Motion to Compel. [Doc. No. 256, pp. 20-21].  At the July 21, 2009 hearing, this Court requested additional briefing on the work-product issue, which the parties submitted and the Court has considered in connection with this Motion. [Doc. Nos. 295, 296, 297].

This Court finds that factual information requested in the Notices meets the legal standard for "substantial need."[8]  *See National Congress for Puerto Rican Rights v. The City of New York,* 194 F.R.D. at 110.   In the Complaint, Plaintiffs allege that Defendants violated Plaintiffs' constitutional right to due process by discharging them from state facilities and placing them into a setting where they have been neglected, abused, and/or exploited.  Complaint ¶ 26, 102.  Plaintiffs further allege that Defendants failed to provide Plaintiffs with needed services and protections after their release and failed to ensure that Plaintiffs were appointed guardians.  *Id.* at ¶¶ 27-32, 110. Plaintiffs' claims under the Rehabilitation Act of 1973, the Medicaid Act, the Social Security Act, and the New Mexico Mental Health and Developmental Disability Code are based on the same factual allegations.  Plaintiffs further seek to certify a class.

The factual information in the requested documents is necessary for Plaintiffs to attempt to establish, *inter alia,* that Defendants failed to provide essential services to Plaintiffs and is the best evidence of what services were or were not provided and whether an on-going custom and practice of failure to assist Plaintiffs and proposed class members exists.[9]  Moreover, this information may be necessary in Plaintiffs' attempt to obtain class certification, particularity as it relates to the requirement of numerosity.  *See* Fed. R. Civ. P. 23 (a).

This Court further finds that Plaintiffs have established the requisite undue hardship. Because of the massiveness of the investigation and Plaintiffs' lack of access to certain information, Plaintiffs could not duplicate the investigation undertaken by the Defendants. Plaintiffs represent

---

[8]For the same reasons this Court finds "substantial need," it also finds relevancy of the requested factual information in the Notices under Fed. R. Civ. P. 26(b)(1) discussed *supra.*

[9]For example, the Court agrees with Plaintiffs that the forms and contact notes from the interviews with former residents, various e-mails, microfiche, and so forth are essential to attempting to prove their case and crucial in determining liability. [Doc. 295 p. 10].

to the Court that they do not have access to the Department of Health files that were used to locate former residents, that they do not have access to the OmniCaid database, and that it likely that some individuals interviewed by the Defendants' investigators are no longer available. [Doc. No. 295, p. 14].

Even if Plaintiffs' could duplicate the investigation, it simply makes no sense for this Court to require them to do so. The work has been done. The database has been created. It would take years for the Plaintiffs to replicate the work, and it would cost Plaintiffs hundreds of thousands of dollars–by Plaintiffs' estimate, two million dollars–to do so. *Id.* This Court agrees with the findings and rulings of previous courts discussed *supra* that under this type of circumstance, ordering production of factual work-product information is warranted.

Accordingly, to the extent that any work-product material has been produced, Defendants have waived the work-product privilege. For all other work-product materials, all factual information must be produced in unredacted form for the documents requested by Plaintiffs in the Notices.[10] In order to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories," Fed. R. Civ. P. 26(b)(3), if a document contains both factual and non-factual information, the non-factual information may be redacted. If the Defendants believe that any privilege or confidentiality concern applies to a particular document that is not addressed in this Memorandum Opinion and Order, a privilege log must be prepared.

**4. Plaintiffs' Motion to Compel [Doc. No. 256]**

---

[10]Documents stored on microfiche may be produced in digital form on a computer that Defendants will provide to Plaintiffs that will not produce a "shadow file." If Plaintiffs want to use any information contained in these documents for discovery purposes or at trial, a hard copy of any document from which this information is extracted will be made at Plaintiffs' expense and a copy must be provided to Defendants before the information can be used by Plaintiffs' counsel during discovery or at trial.

For the reasons set forth above, this Court will grant Plaintiffs' Motion to Compel in part to the extent it can determine what documents Plaintiffs are requesting.  Defendants will produce the following documents:

a.   the "discharged individuals spreadsheet," the "matrix" and the "interview forms/tools" used by interviewers in phase two to assist them in their interviews described by Bert Dennis or the Rule 30(b)(6) designee at their depositions.

b.  the "CSI Monthly Reports" and "contact notes" referred to by Bert Dennis in her deposition.

c. Statements from Irene Chavez, Pat Chavez, Brother Fabian, and the videotaped statement of Jewel Goforth.[11]

d.  The e-mails exchanged between the New Mexico Department of Health officials and their staff, consultants and agents since November 2007 with the exception of e-mails between in-house counsel and defense counsel which may be protected by the attorney-client privilege.   If there are any such e-mails in this category, Defendants must provide a privilege log.

With respect to the SCAR minutes, the "Bible," and "Index cards" which have been made available for review at the office of defense counsel, Norman Weiss, Defendants will provide Plaintiffs with their own copies of these documents.  Copies may be produced in digital form on the same computer  referred to in footnote 10.  Defendants have waived any privileges in connection with these documents by previously making these documents available to Plaintiffs, and any confidentiality concerns are covered under this Court's Confidentiality Order. [Doc. No. 44].

---

[11]In the hearing of July 21, 2009, counsel for Defendants stated that the Defendants would produce these statements.

Accordingly, all factual information outlined above must be produced in unredacted form. If a document contains both factual and non-factual information, the non-factual information may be redacted.  If the Defendants believe that any privilege or confidentiality concern applies to a particular document that is not addressed in this Memorandum Opinion and Order, a privilege log must be prepared.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File Sur-Reply is hereby granted; Governor's Office's Motion for Protective Order is hereby granted in part and denied in part; the Governor's Office's Second Motion for Protective Order is hereby granted in part and denied in part; Defendants' Motion for Protective Order is hereby granted in part and denied in part, and Plaintiffs' Motion to Compel is hereby granted in part and denied in part as discussed more fully in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that the Court's Confidentiality Order [Doc. No. 44] is applicable to any documents produced pursuant to this Order and to which Defendants have raised a concern or objection on the basis of confidentiality.

**IT IS FURTHER ORDERED** that taking into account  the findings in this Memorandum Opinion and Order, the parties are to confer and advise the Court within twenty days of the entry of this Order what issues, if any, are remaining for this Court's consideration regarding Plaintiffs' Motion to Compel. [Doc. No. 256].


_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**